### In re GRAVES.

(*District Court, N. D. Iowa, E. D.* November 16, 1886.)

COURTS—UNITED STATES DISTRICT COURT—JURISDICTION—ARREST OF SUITOR IN ONE STATE TO ANSWER CONTEMPT OF FEDERAL COURT IN ANOTHER—REV ST. U. S. § 1014.

The judges of the district courts of the United States have no power or authority, under section 1014, Rev. St. U. S., or under any other law or statute, to cause the arrest of a citizen of the state and district in which the judge resides, and to order his removal to another state, in order that he may be there imprisoned until he obeys an order made in a civil case pending in the United States court in that state.

Application for Order authorizing arrest, and removal into Northern district of Illinois.

*Wm. J. Manning* and *W. J. Knight,* for the application.

*Henderson, Hurd & Daniels, contra.*

SHIRAS, J. The question presented for determination arises upon the following facts:

On the thirtieth day of March, 1882, a limited partnership was organized under the laws of the state of Illinois, in which William A. Boies, B. B. Fay, and L. W. Conkey, residents of Chicago, were general partners, and J. K. Graves, a resident of Dubuque, Iowa, was special partner. The firm becoming insolvent, judgments were confessed in January, 1883, in favor of various parties, aggregating, in all, some $200,000; the same being entered in the federal and state courts of Illinois, and executions thereon were issued and levied on the property of the firm, and, upon the sale thereof, the proceeds were paid to the plaintiffs in execution.

On the fifteenth day of March, 1883, one Chester C. Corbin, a creditor of the firm, filed a bill in equity in the nature of a creditors' bill, in the United States circuit court for the Northern district of Illinois, to which the members of the firm, and the several parties in whose favor judgments had been entered by confession, were made parties defendant. To this bill the special partner, Graves, entered his appearance, and filed an answer; and upon the hearing the court found and adjudged that the entering the confessions of judgment in favor of Graves and others was a fraud upon the creditors; and that two certain creditors' bills, filed by the Commercial National Bank of Dubuque and Bay State Sugar Refining Company, were filed in fraud of the rights of creditors; and that, by means of such proceedings, the said Graves had obtained control over, and had disposed of, for his own use and benefit, the sum of $100,796.71, which in fact was a trust sum in his hands, and which should have been paid to the creditors of said firm,—the said amount being reached by adding together the sums paid to said Graves, to the Commercial Bank, the Dubuque County Bank, and the Importers' & Traders' National Bank; and thereupon it was ordered that said Graves pay to the clerk of said United States circuit court, in 30 days, the said amount above named, to be applied in payment of the amounts due creditors, under the further decree of the court. The sum so ordered to be paid not being paid to the clerk, on the twenty-ninth of December, 1885, an execution, in due form, was issued to the marshal of said Northern district of Illinois, against the property of said Graves, which was returned by the marshal unsatisfied; and on the sixth day of May, 1886, an *alias* execution was issued to the marshal, who returned thereon that he had served the same by reading same to the said Graves, and demanding the surrender of sufficient property to satisfy said writ, and also the surrender of such property as he had or owned, not exempt from execution, and that said Graves refused to pay said execution, in whole or in part, or to surrender any property whatever.

On the twenty-sixth of October, 1886, an order was entered in the cause requiring the defendant Graves to personally appear before the court on Saturday, October 30, 1886, and show cause why he should not be attached for contempt for failing and refusing to obey the order and decree of the court entered November 17, 1885; being the order for the payment into court of the sum of $100,796.71. A copy of this order was served upon Graves at his residence, in Dubuque, Iowa, by one W. J. Cantillon, a resident of Iowa, on the twenty-seventh of October, 1886. He did not appear in the court at Chicago, and on the first of November, 1886, the following order was entered in said United States circuit court, at Chicago:

"And it also appearing that said motion to appear and show cause on said last-named day was continued until Monday, November 1, 1886, when said Graves failed to appear in obedience to said order, notwithstanding said order to show cause had been personally served on him, the said Julius K. Graves; and said motion now coming on for hearing, and the court being satisfied that the said Graves has deliberately and willfully violated the decree entered herein on the seventeenth day of November, 1885, by failing and refusing to pay to the clerk of this court the sum therein ordered to be paid by him, or any part thereof,—it is therefore ordered, adjudged, and decreed that the said Julius K. Graves is guilty of contempt of the authority of this court by said willful failure and refusal as aforesaid, and that an attachment do now issue, in due form, for the arrest forthwith of the said Julius K. Graves, directed to the marshal for the Northern district of Illinois; and that, when arrested by said marshal, he be committed to the county jail of Cook county, in the state of Illinois, and that he be there held in custody until he comply with the orders of this court, or until he is discharged by due process of law."

On the third day of November, 1886, a writ, in the following form, was issued by the clerk of said United States circuit court:

"*To the Marshal of the Northern District of Illinois*—GREETING: We command you to attach Julius K. Graves forthwith, if he shall be found in your district, for his contempt of the authority of said court; and, when arrested by you, said marshal, that you commit him, said Graves, to the county jail of Cook county, in the state and Northern district of Illinois; and that the said Graves be held in said county jail of Cook county until he comply with the orders of said court in that behalf, or until he, said Graves, be discharged by due process of law, and have you then and there this writ. Witness," etc.

A copy of the record in the cause of *Corbin* v. *Graves et al.*, containing the various orders above recited, with the original writ issued to the marshal of Illinois, is submitted, and an order is asked, directing the marshal of the Northern district of Iowa to arrest the said Graves, and deliver him to the marshal of the Northern district of Illinois.

In support of the application it is urged that section 725 of the Revised Statutes enacts that "the said courts shall have power to impose and administer all necessary oaths, and to punish by fine or imprisonment, at the discretion of the court, contempts of their authority: provided, that such power to punish contempts shall not be construed to extend to any cases except, * * * and the disobedience or resistance by any such officer, or by any party, juror, wit-

ness, or other person, to any lawful writ, process, order, rule, decree, or command of the said courts;" and that under this section a proceeding in contempt is criminal in its nature, and authorizes the arrest and removal of the party proceeded against under the provisions of section 1014 of the Revised Statutes.

It is settled that proceedings for contempt may be of a twofold nature: (1) For the purpose of punishing the guilty party for his disrespect to the court or its order; and (2) as a means of compelling obedience to some lawful order, requiring the party to perform some act or duty required of him, and which he refuses to perform. *In re Chiles*, 22 Wall. 157. In other words, there are civil contempts, which usually consist in failing to do something which the party is ordered to do by the court for the benefit or advantage of another party interested in the litigation pending in the court; and criminal contempts, which embrace all acts disrespectful to the court, or which obstruct the orderly administration of justice, including disobedience or resistance to the process of the court, interference with property in custody of the court, misconduct of officers of the court, and the like. Rapalje, Contempts, 25; *Phillips* v. *Welch*, 11 Nev. 187. In the latter case it was ruled "that, if the contempt consist in the refusal of a party to do something which he is ordered to do for the benefit or advantage of the opposite party, the process is civil, and he stands committed until he complies with the order. The order, in such case, is not punitive, but executive. If, on the other hand, the contempt consists in a threatened act, injurious to the other party, the process is criminal, and conviction is followed by a penalty of fine or imprisonment, or both, which is purely punitive."

Under the former practice in courts of equity, a decree which operated only *in personam* could be enforced only by means of a process in contempt. Daniell, Ch. Pr. 1032. When issued for that purpose, it was a civil remedy, used solely for the benefit of the party in whose favor the decree had been made. It may well be that, in a given case, a party may subject himself to be proceeded against both civilly and criminally. Thus, if a defendant, having in his possession a specific sum of money, or other property, is ordered to pay or deliver the same into the court for the benefit of the prevailing party, within a fixed time, and he willfully refuses to obey the order, it being within his power so to do, then the civil process of contempt may be resorted to as a means of compelling obedience to the decree; and in such case, as is said by the supreme court in *Re Chiles, supra,* "the party refusing to obey should be fined and imprisoned until he performs the act required of him, or shows that it is not in his power to do it." No fixed term of imprisonment is in such case pronounced, because the object is to secure obedience to the order or decree; and by yielding obedience, or by showing that it is not in his power to perform the requirements of the order, the party proceeded against will be entitled to be released. So, also, in the supposed case, the disobedience be-

ing willful, the offender may be proceeded against criminally; in which case he is charged with the offense, and, being put upon trial, he may be convicted, and be punished by fine or imprisonment, or both. In the latter case, the punishment is for an offense against the government.

In such case, however, the punishment inflicted must be fixed and be made certain when the sentence is pronounced. It certainly cannot be true that, as a punishment for a criminal offense against the government, even if the offense be in the nature of contempt, that the court could sentence the convicted party to imprisonment during the pleasure of the court. The punishment to be inflicted is said to be at the discretion of the court, but this discretion must be exercised when the sentence is imposed, and is exercised by determining the amount of the fine, or the duration of the imprisonment. It therefore becomes necessary to determine, in the first instance, what the nature of the proceeding for contempt, instituted in the present case, is,—whether it be civil or criminal in its object and purpose.

An examination of the record and papers submitted in support of the present application clearly shows that the United States circuit court for the Northern district of Illinois, in ordering the arrest and imprisonment of the defendant Graves, was and is seeking to enforce obedience on his part to the order found in the decree entered November 17, 1885, directing and commanding him to pay into court the sum named in the decree. In the order directing the arrest it is recited that the contempt consists in the willful failure to pay to the clerk the sum named, and the order is that the party be arrested, and be confined in jail until he complies with the orders made. All the orders made and proceedings had, so far as the same have been made to appear at the present hearing, were made and had in the equity cause of *Chester C. Corbin* v. *Boies et al.*, and are proceedings and orders, civil in their nature, intended to secure and enforce obedience, on part of the defendant Graves, to the decree made in that cause for the benefit of the complainant and other creditors of the limited partnership.

Upon the hearing, counsel for Mr. Graves cited authorities in support of the proposition that, under the rules now governing the practice in equity, and especially under the eighth general rule in equity, the circuit court in Illinois could not rightfully use the process of contempt and imprisonment as a means of enforcing payment of money; the claim being that, although such process could be formerly used by courts of equity for that purpose, the right no longer existed. This question is not before me for decision. The circuit court in Illinois, having jurisdiction of the case and the parties thereto, has held and decided that it has the right to enforce obedience to its decree for the payment of the money by attaching the person of the party, and imprisoning him until he yields obedience, or shows legal excuse for failing so to do, and it certainly is not for me to hear or pass upon

the question whether this ruling so made is or is not correct. The question submitted to me is one not decided by the court in Illinois, and which did not, and could not, arise until this application was made in Iowa; and that is, whether there is vested in the district judges of the United States any power, right, or authority to cause the arrest of a citizen of the state and district in which the judge resides, and his removal to another state, in order that he may be there imprisoned until he obeys an order made in a civil case pending in the United States court in that state.

It is hardly necessary to say that to cause the arrest of a citizen of Iowa in Iowa, and his removal into another state and jurisdiction, is the exercise of a very high and unusual power, and, to justify its exercise, the existence and the source of the power must be clearly shown. It cannot be left to a mere inference, nor be based upon the argument that its exercise may be highly convenient, and that, if not possessed and exercised, the courts in a sister state or district may not be able to do justice in a case therein pending. No matter how weighty may be the reasons in favor of the enactment of a statute authorizing the arrest and removal of a party into another state, they are powerless to confer the right to so order upon any officer or court. The right must be shown to be confined by some positive enactment; and, in the absence thereof, it would be a usurpation of power on part of any judge to make such an order, and, if made, it would be wholly nugatory.

In argument of counsel it is claimed that section 1014 of the Revised Statutes confers the right to make the order asked for in the present instance. That section provides that, "for any crime or offense against the United States, the offender may, by any justice or judge of the United States, * * * of any state where he may be found, and agreeably to the usual mode of process against offenders in such state, and at the expense of the United States, be arrested, and imprisoned or bailed, as the case may be, for trial before such court of the United States as by law has cognizance of the offense. Copies of the process shall be returned, as speedily as may be, into the clerk's office of such court, together with the recognizances of the witnesses for their appearance to testify in the case; and, where any offender or witness is committed in any district other than that where the offense is to be tried, it shall be the duty of the judge of the district, where such offender or witness is imprisoned, seasonably to issue, and of the marshal to execute, a warrant for his removal to the district where the trial is to be had."

This section, by its very terms, is intended to cover cases wherein, a crime or offense having been committed against the United States, the party charged therewith is arrested, and brought before a judge or magistrate for a preliminary examination, for the purpose of holding him in custody or under bail until the trial is had; it being also provided that, if the offender is committed in a district other than

that where the offense is to be tried, it shall be the duty of the judge of the district where such offender is imprisoned to seasonably issue a warrant for his removal to the district wherein the trial is to be had. This section confers authority to order the removal for trial of a person who, by the order of a competent judge or magistrate, has been held to answer to some crime or offense laid to his charge, but it clearly contemplates and requires that the order for removal must be based upon a previous order of commitment.

In practice, it is usual, where a crime has been committed, and an indictment has been found, or proper information before a magistrate has been made, for the officer charged with the duty of making the arrest to apply to the judge of the district wherein the offender is found for an order for his arrest. In making such an order, the judge is acting as an examining magistrate, under the first clause of the section. If the evidence submitted satisfies the judge that the order of arrest should be granted, it is ordered; but it should require the offender, when arrested, to be brought before the judge, and on such hearing the party arrested may be heard to show any legal reason why he should not be further held in custody. If, upon such hearing, sufficient ground for holding the party for trial appears, the judge may, and usually does, at once order his removal for trial into the proper district; but in all such cases the order of removal must be based upon a previous order of imprisonment for trial. This has been the uniform rule in this district, having been settled by the rulings made by Justice MILLER and Judge LOVE, as appears from their statements to be found in 1 Woolw. 422; and in which Justice MILLER holds "that the act of congress in question was not intended to authorize imprisonment without such preliminary examination by the committing magistrate as should satisfy him that there was enough evidence of the prisoner's guilt to justify a reference of the case to the grand jury of the proper district," and "that no authority exists in any judge to order a removal of Mr. Bailey into the district of Illinois until he shall have had a hearing, or been committed to prison, in Iowa, by some proper officer."

The case of *In re Ellerbe,* 13 Fed. Rep. 530, which was a proceeding upon *habeas corpus* before Judge McCRARY, does not, when properly read, purport to lay down any different rule. That case holds that the courts of the United States have the power to punish contempts against their authority; that a failure to obey the writ of subpœna to appear as a witness, when properly served, is a contempt, and constitutes an offense, criminal in its nature, for which the party may be proceeded against, and be tried and punished by the court whose writ is disobeyed; and that, when a proceeding to punish a party for a contempt is pending in one district of the United States, he may be arrested, under the provisions of section 1014, in any district where he may be found, and an order for removal may be made as therein pointed out; but it clearly appears that Judge

McCrary had in mind cases in which the removal was sought in order that the offender might be put upon trial and be punished for the contempt alleged against him. Thus, he states, on page 532 of the opinion, that "it was, no doubt, the duty of the marshal of the Eastern district of Arkansas to apply to the judge of *this* district for an order for the arrest of the petitioner, and it was the duty of the district judge to enter into such an investigation as was necessary to enable him to determine whether the petitioner should be sent out of the district to answer the charge against him." As reported in the Federal Reporter, a mistake is made in using the word "his" instead of "this," in the above extract; thus, at first glance, making it appear that Judge McCrary held that the marshal must apply for the order of arrest to the judge of the district wherein the proceeding was pending, instead of the district wherein the offender resided or was found. The context shows, however, that this must be a misprint, and, on reference to the report of the same case in 4 McCrary, 453, it will be seen that the correct reading is as I have quoted the same. From this extract, and from other statements found in the case, it is made clear, beyond doubt, that in that case it was made to appear that the application was for the arrest of the party, and for his removal for trial to Arkansas. The proceeding, therefore, was criminal in its nature, involving an offense against the government of the United States, whose process had been disobeyed, and the object of the arrest in Missouri was to procure the removal of the offender to Arkansas for trial. This decision does not hold that a party may be arrested under the provisions of section 1014, and be removed from the state wherein he resides, into another district, in order that the courts of that district may be enabled to enforce obedience to a decree or order made in an equity case. All that is held in that cause by Judge McCrary is that a proceeding to *punish* for contempt is criminal in its nature, and that, when such a proceeding is instituted in one district, the offender may be arrested in another district, under the provisions of section 1014, and be removed for trial into the district where the offense was committed; and the decision does not purport to change the rule laid down by Justice Miller, that no authority exists in any judge to order the removal of a person into another district, until he shall have had a hearing, or been committed to prison in Iowa by some proper officer.

The case of *Fanshawe* v. *Tracy*, 4 Biss. 490, also cited in support of this application, in fact recognizes the distinction between civil and criminal contempts. It appeared that affidavits had been filed in the court charging certain parties with a willful violation of a writ of injunction previously issued in the cause. The main point discussed by his honor, Judge Drummond was whether it was the proper practice to enter a rule to show cause why an attachment should not issue, or to issue the attachment in the first instance. After discussing this question, the judge proceeds to say:

"Perhaps it may be proper for me to make a few remarks upon the general scope and effect of the proceedings for contempt, about which there seems to be some difference of opinion. As I understand it, a party against whom proceedings for contempt are instituted—a party who has conducted himself in such a way as to justify the court in punishing him for contempt, or for the disobedience of its order—has committed an offense against the United States. The court is the mere instrument or organ of the government in punishing the person for the offense which he has committed. As I said during the argument, if he is imprisoned by order of the court, it is the act of the United States. The United States is the custodian of his person. If he is fined by the court, the fine goes to the United States; and, although it may be a proceeding growing out of a civil action, it is distinct in its character in. many of its essential particulars."

The whole reasoning of the judge shows that he had under consideration a proceeding to punish the offenders for their contempt, and the conclusions announced have reference solely and only to a proceeding of this character.

The warrant of arrest issued to the marshal of Illinois authorizes and commands him to arrest the said Graves, if he be found in the Northern district of Illinois, and, by its terms, it can be executed only in that district. To authorize an arrest of Mr. Graves in Iowa, a warrant for that purpose must be issued by some proper judge or magistrate in Iowa, having authority so to do, and only then when the necessary facts have been made to appear. If the application now made can be construed into an application for the committing order, under the provisions of section 1014 of the Revised Statutes, then the duty is imperatively placed upon the judge of ascertaining whether there is any proceeding pending in the Northern district of Illinois, the object of which is to cause the placing on trial of the person named in the warrant for the offense of contempt. The record and papers submitted wholly fail to show that any such proceeding is pending in any court, or before any magistrate; and counsel supporting the application do not claim that, if arrested and removed to Illinois, Mr. Graves will be put upon trial in order to ascertain whether he is guilty of the offense of contempt. The warrant placed in the hands of the marshal shows that it is not a warrant of arrest for the purpose of a trial, but a warrant of arrest for the purpose of enforcing an order already made; or, in other words, it is simply a mandate, issued by the circuit court of the Northern district of Illinois, for the arrest of the said Graves, if he can be found in that district, in order that the court may coerce him into obeying the order made for the payment of money in the civil case of *Corbin* v. *Boies et al.*

It will not do to confuse a remedy of a civil nature, used merely as a means of compelling obedience to an order for the payment of money in a civil suit, with a proceeding in which it is charged that a criminal offense has been committed against the government of the United States, and in which the party may be arrested, and put upon his trial. There is, as has been already stated, no evidence submitted showing that a criminal proceeding is pending in the United States

court in Illinois against Mr. Graves, or that he is in fact charged with the criminal offense of contempt; and therefore we are brought back to the question whether there is any authority of law for a judge in Iowa ordering a citizen of Iowa to be arrested and removed into Illinois, in order that the courts of Illinois may then arrest him, and keep him in custody until he pays into the court a sum of money found and adjudged to be by him held in trust for some other persons.

The record shows that before the warrant of arrest was issued two writs of execution had been placed for service in the hands of the marshal for the Northern district of Illinois. No one would claim for a moment that upon application of the marshal, and a showing that there was no property belonging to Graves, the defendant in the execution, to be found in Illinois, but that there was personal property belonging to him in Iowa, the judge of the district in which such property was found could order it to be seized, and be removed into Illinois, in order that the marshal of Illinois might then levy on the same in satisfaction of the writ of execution. It would be a strange anomaly, if it were true, that the rights to property are so sacred that the judge of one state or district cannot order its removal into another state, to be therein levied upon, and yet the judge may order the owner of the property to be arrested, and his body to be removed into another state, in order that when so removed he may be imprisoned until he pays the money sought to be made upon the execution.

If the position taken in support of this application is correct, what is there to prevent, in every case wherein a non-resident is sued, and a decree for the payment of money is entered against him,—as, for instance, upon the foreclosure of a mortgage,—and he fails to pay the same within the terms of the decree, that he be attached for contempt, and be arrested, and, at the expense of the United States, be taken from his residence, perhaps in California, to New York, to be there imprisoned, not until he is tried for a criminal contempt, but until he obeys the decree by paying the amount adjudged against him? In effect, this would be using the power of the United States government, and the laws and machinery enacted and provided for the punishment of crimes and offenses against the government, as a mere means of enforcing the collection of debts due private parties.

What I find and hold, briefly restated, is that it is not made to appear, but in fact is disclaimed, that there is pending in the United States circuit court for the Northern district of Illinois any proceeding of any kind, formal or summary, wherein it is charged that J. K. Graves has been guilty of a contempt, criminal in its nature, and in which proceeding it is proposed to examine into and determine the question of his guilt, with a view to punishing him for such contempt, if he be guilty thereof; that no affidavit or other evidence has been submitted tending or purporting to show that he has been guilty of, or is charged with, an offense against the United States, and therefore

no ground is laid for obtaining either an order of commitment, or a warrant of removal under the provisions of section 1014 of the Revised Statutes; that the record and papers submitted in support of the application made, show that the United States circuit court in Illinois has, in the equity suit of *Corbin* v. *Boies et al.*, as a means of enforcing the performance on part of Graves of the order for the payment of a named sum of money into court, ordered his arrest and imprisonment until such order is obeyed; and that this is a civil remedy, in aid of which the judge of the Northern district of Iowa has no authority to order the arrest and imprisonment of the party proceeded against, and no authority to order his removal into Illinois. The application is therefore refused.