### In re BESHEARS.

#### (District Court, S. D. Iowa.   February 23, 1897.)

CRIMINAL LAW—REMOVAL TO ANOTHER DISTRICT FOR TRIAL—NOTICE.

  Upon an application to a district judge, under Rev. St. § 1014, for an order
  for the removal of a prisoner in the custody of the marshal to another dis-
  trict for trial, the prisoner is entitled to notice, and, if he desires it, to be
  brought before the judge for the purpose of presenting any objections he
  may have to the making of the order.

On application of Frank P. Bradley, United States marshal,
Southern district of Iowa, for warrant of removal to district of Kan-
sas of John Canedy, alias James A. Beshears.

Upon February 19, 1897, J. J. Steadman, a commissioner of the circuit court
in and for the Southern district of Iowa, upon information duly filed before
him, charging John Canedy, alias James A. Beshears, with having committed in
the district of Kansas a violation of section 5392, Rev. St., issued his warrant
for arrest of said Canedy, alias Beshears. The marshal of said Southern dis-
trict of Iowa thereupon arrested said defendant, and brought him before said
commissioner.   Upon the hearing under said information it appeared that an in-
dictment against said Canedy, alias Beshears, had been duly found in said dis-
trict of Kansas; wherefore, after due examination, said commissioner ordered
said defendant to give his due bond in the sum of $1,000 for his appearance at
the next term of the district court at said district of Kansas, at Topeka, to an-
swer said charge, and, in default thereof, that said defendant be committed to
the custody of said marshal, until discharged by due process of law.   Applica-
tion having been made by said marshal to the district judge of the Southern
district of Iowa for a warrant of removal of said defendant to the district of
Kansas, it appeared that said defendant had neither notice nor knowledge of the
making of said application.   Thereupon the warrant of removal was refused
until defendant had such notice, such refusal being announced as follows:

Mt. Pleasant, Iowa, Feb. 23, 1897.

Frank P. Bradley, Esq., U. S. Marshal, Council Bluffs, Iowa.

Dear Sir:   Your letter of the 20th inst., containing papers with
reference to the case of John Canedy, alias James A. Beshears, at
hand.   You inclose certified copy of indictment as presented by
the grand jury of the First division of the district of Kansas, char-
ging said Canedy, alias Beshears, with the crime of perjury, and
also certified copy of the record of J. J. Steadman, commissioner
of the United States circuit court of this district, showing the ar-
rest of the prisoner in this district, his examination before said com-
missioner, and commitment for trial in said district of Kansas for
the crime charged, and the fixing of bail at one thousand dollars.
You further state that the prisoner is in your custody, and is unable
to give said bail.   You ask for an order, under section 1014, Rev.
St., directing his removal to the district of Kansas for trial, and
add: "I would have brought the prisoner before you, but the de-
partment intimated lately that that was an unnecessary expense."

The practice in this district, without an exception, so far as I
have been able to understand, since the time of In re Bailey (1869)
1 Woolw. 422, Fed. Cas. No. 730, has been to have the prisoner
brought before the judge for such examination as may be found nec-

essary, before the application to remove ripens into the order of re-moval. I have not found any decision directly upon the point here raised. Nor, in my examination of the reports of the federal courts, have I found any case where the report of the case shows affirmatively that the prisoner was not brought personally before the judge to whom the application for removal was presented. In the statement of the facts, or in the reasoning of the judge, each opinion which I have examined seems to regard as a matter of course the presence of the prisoner upon the hearing of the application for order of removal.

The authority for the order of removal is section 1014, Rev. St., latter part of section. After providing the method by which offenders against the United States statutes may be arrested, imprisoned, or bailed for trial, the section provides:

"And where any offender or witness is committed in any district other than that where the offense is to be tried, it shall be the duty of the judge of the district where such offender or witness is imprisoned, seasonably to issue, and of the marshal to execute, a warrant for his removal to the district where the trial is to be had."

May the order for removal be made upon ex parte hearing in the absence of the prisoner, and upon the face of the papers from the committing magistrate, or should such order be made after the prisoner has had opportunity, if he desire, to contest the application therefor? I think it might well be assumed that the prisoner may, if he will, waive his personal appearance on the hearing of such application. Such waiving would then justify the judge, if no objections are presented, in assuming that the prisoner thereby consented to the order for removal, in that he makes no resistance thereto. But here it is also assumed that the prisoner has notice or knowledge of the making of the application. He could not fairly be held to waive that of which he had neither notice nor knowledge. He is in custody, imprisoned. How can he acquire such notice or knowledge? Only by being brought personally before the judge, or being given opportunity for personally waiving his presence. Should he desire to present objections to the application, how is the opportunity afforded him, if it be determined whether the order of removal shall issue in his absence and without notice to him that the order was about to be asked? Possibly this opportunity might be afforded him on a habeas corpus hearing, after the order of removal had been made. But in a large number of cases—perhaps the large majority—sufficient time does not elapse between the issuing of the order by the judge and the execution by the marshal to permit the ready issuing of the writ. As a general rule, the execution follows close on the issuing of the order. Again, in many, if not in most, of these cases, the prisoner is thus arrested and imprisoned away from his home and friends, and thus he has little opportunity to sue out the writ of habeas corpus. But, if he could readily sue out the writ, why put him to such necessity, when, upon the hearing of the application, substantially the same field of resistance is opened to him as upon the hearing upon the writ? As the judges are now situated, since the establishment of the United States circuit court

of appeals, such writ, especially in this circuit, must generally be sued out before the district judge who issues the order of removal. Why thus ask the judge first to make whatever investigation he may deem necessary before issuing the order, and then to traverse the same ground, though perhaps more thoroughly, in a hearing upon the writ?

One of the earliest cases which my examination of this matter has brought to my attention is that of In re Bailey, 1 Woolw. 422, Fed. Cas. No. 730, which came before Justice Miller, in this circuit, in 1869. In the course of his examination as to whether he should issue an order of removal for the defendant to the Northern district of Illinois, it appears he submitted the matter to District Judge Love, of this district, and in his communication to Justice Miller, Judge Love uses this language:

"I, however, without giving any opinion upon the general question, held, as I have always done in cases of indictment, that the prisoner should be brought before me in order that the fact of indentity might be inquired into. In this I proceeded upon the idea that the finding in the other district, whether by indictment or otherwise, established nothing with regard to the identity of the prisoner. The marshal, in making the arrest, might mistake the man, and remove to a remote state an individual not charged with any offense whatever."

While the case just cited does not bring directly in review the question whether there should be a hearing before the district judge in the presence of the prisoner when the committing magistrate within this district has, under section 1014, Rev. St., ordered the prisoner committed to await the order of removal, nevertheless the statement of Judge Love is very suggestive as to the practice uniformly followed by him in this district.

The case of In re Buell, 3 Dill. 116, Fed. Cas. No. 2,102, contains some remarks of Circuit Judge Dillon which are pertinent to the general subject of this inquiry. This case was decided in 1875. District Judge Treat had discharged, upon habeas corpus, Buell, who had been ordered removed to the District of Columbia, under section 1014, Rev. St. The matter came before Circuit Judge Dillon upon appeal, who uses this language:

"It is argued that the question of the sufficiency of the indictment is for the court in which it was found, and not for the district judge on such application. I cannot agree to this proposition in the breadth claimed for it in the present case. This provision devolves upon a high judicial officer of the government a useful and important duty. In a country of such vast extent as ours, it is no light matter to arrest a supposed offender, and, on the mere order of an inferior magistrate, remove him hundreds, it may be thousands, of miles for trial. The law wisely requires the previous sanction of the district judge to such removal. Mere technical defenses to an indictment should not be regarded; but the district judge who should order the removal of a prisoner, when the only probable cause relied on or shown was an indictment, and that indictment failed to show any offense against the laws of the United States, or showed the offense not committed or triable in the district to which the removal is sought, would misconceive his duty, and fail to protect the liberty of the citizen."

In the case of In re Ellerbe, 13 Fed. 530, 532, Circuit Judge Mc-Crary was called upon to hear a petition in habeas corpus. The judge of the district had ordered the removal of the prisoner for trial to another state. In the course of his decision, Circuit Judge McCrary remarks:

·"It is next insisted on behalf of the petitioner that he is entitled to a hearing before he can be sent out of the district, and that he has not had such a hearing as the law requires. It was, no doubt, the duty of the marshal of the Eastern district of Arkansas to apply to the judge of his district for an order for the arrest of the petitioner; and it was the duty of the district judge to enter into such investigation as was necessary to enable him to determine whether the petitioner should be sent out of the district to answer the charge against him. Precisely how far the district judge was authorized to go upon such a hearing it is not necessary in the present case to determine. Certain it is that he had the right to inquire into the question of the prisoner's identity. This would be necessary in any case, for the judgment of the court in another district, however conclusive upon other questions, would establish nothing with regard to the identity of the prisoner."

In the case of In re Corning, 51 Fed. 205, 206, Judge Ricks, of the Northern district of Ohio, upon application for an order to remove the defendants, who had been indicted in the district of Massachusetts, uses this language:

·The order of removal is not a mere ministerial act on the part of the district judge, but is a judicial function including the exercise of a judicial discretion upon the papers presented in support of the application."

In the case of In re Terrell, 51 Fed. 213, 214, Circuit Judge Lacombe, on the hearing upon habeas corpus, uses these words:

"It is not disputed by the district attorney that it is not only the right, but the duty, of the district court, before ordering removal, to look into the indictment so far as to be satisfied that an offense against the United States is charged, and that it is such an offense as may lawfully be tried in the forum to which it is claimed the accused should be removed; and the same right and duty arises upon habeas corpus, whether the petitioner is held under a warrant issued by the district judge whose action is thus reviewed or under a warrant of the commissioner to await the action of the district judge. The later decisions of the circuit court abundantly establish this position."

After citing various cases, Circuit Judge Lacombe proceeds:

"There is good cause for holding that this power should be exercised liberally whenever the judge before whom the questions are raised on application for a warrant of removal or on habeas corpus is satisfied, from the face of the indictment, that were such indictment before him for trial, and demurred to, he would quash it. This is a country of vast extent, and it would be a grave abuse of the rights of the citizen if, when charged with alleged offenses, committed perhaps in some place he had never visited, he were removed to a district thousands of miles from his home, to answer to an indictment fatally defective, on any mere theory of a comity which would require the sufficiency to be tested only in the particular court in which it is pending."

In U. S. v. Brawner, 7 Fed. 86, 87, Judge Hammond was considering an application for an order for removal under section 1014. In the course of his opinion, when considering the power of the district judge with reference to the order of removal, he remarks:

"The very purpose of conferring the power is to secure the judicial sanction of a supervisory judge for the action of the committing magistrate in so important a matter as that of removing a citizen from one state or district to another for trial upon a criminal charge. If the warrant of removal is to be issued mechanically, and as a mere ministerial act, there is no reason why the committing magistrate should not have been required to issue it at once upon neglect or refusal to give bail. The necessary implication from the method of procedure adopted by the statutes is that the judge of the district * * * must judicially determine whether the prisoner shall be taken to another district for trial, and that he may refuse his warrant where it appears that the removal should not be made, or where he would admit the party to bail. Doubtless the action of the committing magistrate is prima facie sufficient as a basis for the warrant, but

it is not conclusive. While the judge should not unnecessarily require another or further preliminary examination, if it appear to him necessary that the bail should be reduced, or that for any reason the prisoner should again be heard in defense, I have no doubt that it is his duty to pass fully upon the case, and determine for himself whether he should be further held or removed."

Other decisions might be quoted containing points pertinent to the general features under consideration (U. S. v. White, 25 Fed. 716; In re Wolf, 27 Fed. 606, 609; U. S. v. Rogers, 23 Fed. 658, 661; In re Graves, 29 Fed. 60, 66; U. S. v. Horner, 44 Fed. 677), whose general trend is with the extracts above quoted. All the cases recognize not only the right, but the duty, of the district judge to examine into the merits of the matter as presented to him to such an extent as may be necessary to enable him to pass satisfactorily upon the question, and determine intelligently whether the prisoner shall be removed. If granting the application for removal could be considered a matter merely of course, no investigation would be necessary by the district judge; but he may not delegate his duties in this regard to the commissioner who has acted as an examining magistrate in the matter within his district. He must determine and act for himself in the line of his judicial duty. How can he know whether the prisoner desires to present objections to the application, if his hearing be ex parte, and without notice to the prisoner? While the matter of expense is not to be overlooked, nevertheless expense is of secondary importance where the liberty of the citizen is involved. In my judgment, the prisoner should have an opportunity to be heard in the matter of the application, if he so desire. Possibly, the question of his identity may be regarded as concluded for the purpose of removal by the decision of the committing magistrate. See Horner v. U. S., 143 U. S. 207, 215, 12 Sup. Ct. 407, 522. But, were this point conceded, the prisoner should be permitted to urge in person and by counsel whatever further objections he may desire to present with reference to the validity of the indictment, its sufficiency to place him upon trial, and whether he can be tried thereupon for the crime therein charged in the district to which his removal is sought. Opportunity can be afforded him to present his objections to the application only by his being apprised that the application is to be presented. In the case named in your letter, as well as in all other cases where, after commitment by a magistrate in this district, an order for removal in thus sought, I desire that you shall notify the prisoner of the time when such application will be presented to me, with a statement of his right to be present, and present objections thereto, if he so desire. If he shall waive objections to the application, it may be presented without his presence. Let the waiver be in writing, signed by him, and presented with the application. Or you may serve such notification upon him, and your return thereon may show the fact of such waiver, if it exists. But in any case where the prisoner shall object to his removal, and express his desire to present objections at the hearing, you are hereby authorized and directed to bring him personally before me with the application for his removal. In all cases where no previous examination has been made by a magistrate of this district, the pris-

oner should be brought personally before me with the application for his removal. This may be considered by you as a standing order in the respects above noted.

Sincerely yours,

JNO. S. WOOLSON, U. S. District Judge.