[No. 1716.]

## In the Matter of the Application of RALPH E. WATERMAN for a Writ of Habeas Corpus.

1. Extradition—Interstate—Constitutional and Statutory Provisions. Under the Constitution of the United States, art. IV, sec. 2, providing that one charged in one state with a felony, who shall flee from justice and be found in another state, shall, on demand of the executive of the former state, be delivered up for removal thereto, and Rev. Stats. U. S. 5278 (U. S. Comp. Stats. 1901, p. 3597), providing that when the executive of a state demands a person as a fugitive from justice of the executive of a state to which such person has fled, and produces a copy of the indictment charging the person demanded with having committed felony, etc., it shall be the duty of the executive of the state to which such person has fled to cause him to be arrested, etc.; the obligation of the executive of a state to deliver up a fugitive from justice on demand of the executive of another state only arises when the fugitive is legally charged with a crime committed within the state demanding his surrender.

2. Habeas Corpus—Extradition—Review. The court, on *habeas corpus* for the discharge of one arrested as a fugitive from justice, under an executive warrant, may examine into the sufficiency of the papers on which the warrant is based, and, if the indictment or complaint on which the requisition is made, and the executive warrant issued, is insufficient, the court will discharge the prisoner.

3. False Pretenses—Indictment—Allegations of Obtaining Property— Necessity. An indictment to charge the offense of obtaining property by means of false pretenses, as defined by the Code of Iowa, sec. 5041, punishing one who, by false pretense, and with intent to defraud, obtains from another "any money, goods, or other property," etc., must allege that accused obtained from another money, goods, or other property.

4. Description of Property. An indictment charging the offense of obtaining property by means of false pretenses must allege the character of the property charged to have been obtained with the same certainty as is required in an indictment for larceny.

Original proceeding. Application by Ralph E. Waterman for a writ of *habeas corpus* for his discharge from custody under a warrant issued by the Governor of the State on the requisition of the Governor of Iowa. **Petitioner discharged.**

The facts sufficiently appear in the opinion.

*R. C. Stoddard*, Attorney-General, for the State.

*Milton Detch, P. F. Carney*, and *Samuel Platt*, for Petitioner:

I.   The defendant should be discharged because the indict-

ment does not charge an offense against the laws of the State
of Iowa in that it fails to show that the defendant obtained
by false pretenses any money, goods, or chattels; it fails to
show that defendant obtained any interest or benefit, by
false pretenses or otherwise, in any money, goods or chattels;
it fails to show that complaining witness parted with any-
thing of value. The indictment fails to establish the juris-
diction and venue in that it does not allege in what state,
territory, or jurisdiction defendant obtained the money,
goods, or chattels; the indictment fails to show that defend-
ant is a fugitive from justice from the State of Iowa in that
no offense is alleged to have been committed within the State
of Iowa; the consummation of the crime being the obtaining
of the money, goods, and chattels, and the place of obtaining
not being alleged, defendant is not a fugitive from justice,
and the Governors of the States of Iowa and Nevada abused
their discretion in attempting to extradite an alleged offender
in the face of a record failing to show that he was a fugitive
from justice.

By the Court, Sweeney, J.:

Petitioner was arrested upon an executive order issued by
the Governor of the State of Nevada upon a requisition of
the Governor of Iowa, which alleged that petitioner was a
fugitive from justice from the State of Iowa, duly indicted
for obtaining money under false pretenses by a grand jury
in that commonwealth, and requesting that said petitioner be
delivered into the custody of one Peter Arendt, the duly
appointed agent of the State of Iowa, for the purpose of
receiving from the authorities of Nevada, and bringing back
to Iowa, said petitioner, to be then and there dealt with
according to law. After being arrested on said executive
warrant of the Governor of Nevada, petitioner applied to a
justice of this court for a writ of *habeas corpus*, alleging that
he was illegally restrained of his liberty upon various grounds,
chief of which being that the indictment upon which the
requisition of the Governor of Iowa was based was fatally
defective in that it did not charge a crime against said peti-
tioner in violation of the laws of Iowa, or of the United

States, and that the governor had no jurisdiction to issue his said warrant arresting said defendant, because no competent evidence was before him that petitioner was a fugitive from justice from the State of Iowa, or had fled therefrom.

A writ of *habeas corpus* was thereupon issued by said justice directed to the said agent of the State of Iowa, directing him to have the body of said petitioner before this court on a day certain, to be then and there dealt with as this court may direct, and to show by what authority he detained the petitioner in custody, and that in the meanwhile the petitioner be released on bail upon the filing of a good and sufficient bond in the sum of $5,000.

It appeared from the return to the writ that said agent of Iowa had detained said petitioner by virtue of an executive warrant of the State of Nevada issued upon a requisition warrant of the Governor of Iowa, but had released said petitioner on bail upon a subsequent order of a justice of this court pending the return of the writ. Petitioner traverses said return of the writ, alleging in effect all matters set up in the original petition for said writ, and in addition pleading that the requisition papers on which the executive warrant of the Governor of Nevada was issued, certified copies of which were made part of the traverse, were not legally sufficient to warrant the Governor of Nevada to have issued his warrant. No motion to dismiss the writ being legally made, the issue presented the court is whether or not the Governor of Nevada had the legal authority to have issued his executive warrant for petitioner upon the requisition papers presented to him by the authorities of Iowa.

Before examining the requisition papers upon which the Governor of Nevada issued his executive warrant, it will be necessary to pass upon the very material and serious objection raised by the attorney-general in behalf of the state and sustained by many reputable authorities, as to whether or not a judge or court, upon the hearing of a *habeas corpus* proceeding, can go back of the simple requisition and examine the indictment or complaint charging the crime upon which the defendant is sought to be extradited for the purpose of passing judgment on the legality or illegality of

the indictment or complaint on which the executive warrant is issued, and by which petitioner is restrained of his liberty, or whether the court is confined solely to the question as to whether the requisition warrant is sufficient in form, and states the facts required to be stated in such a warrant to authorize the petitioner to be held and taken back to Iowa.

Upon this question the decisions of the various courts have not been entirely harmonious. Article IV, section 2, of the Constitution of the United States, provides that: "A person charged in any state with treason, felony, or other crime, who shall flee from justice and be found in another state, shall, on demand of the executive authority of the state from which he fled, be delivered up, to be removed to the state having jurisdiction of the crime."

For many years after the adoption of the Constitution of the United States there was no legislation providing the mode by which this clause of the constitution should be carried into effect, and as a natural consequence controversies arose between the states in regard to this matter, one of which, when the Governor of Virginia declined to comply with the requisition from the Governor of Pennsylvania, during the administration of President Washington, gave rise to the passage of the present act of Congress providing for the extradition of fugitives from justice, which is as follows:

"Whenever the executive authority of any state or territory demands any person as a fugitive from justice of the executive authority of any state or territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any state or territory charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the state or territory from which the person so charged has fled, it shall be the duty of the chief executive of the state or territory to which such person has fled to cause him to be arrested and secured and to cause notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive and to cause the fugitive to be delivered to said agent when he shall appear.

If no such agent appears within six months from the time of the arrest, the prisoner may be discharged. All costs or expenses incurred in the apprehending, securing, or transmitting of such fugitive to the state or territory making said demand shall be paid by such state or territory." (U. S. Rev. Stats. 5278; U. S. Comp. Stats. 1901, p. 3597.)

Construing this statute in the light of the authorities which I have examined, and the section of the Constitution of the United States referring to extradition, I believe that the party sought to be extradited must be charged with the commission of a crime and be a fugitive from justice to authorize the executive of the state upon whom the demand is made to issue his warrant, and that the obligation of the executive of a state to deliver up a fugitive from justice on demand of the executive authority of another state only arises when the fugitive is charged legally with crime within the state demanding the surrender and having jurisdiction of the offense, and to be charged with crime means charged in the regular course of law and in conformity with law. The question as to whether or not a defendant is properly charged with crime under the laws of the state demanding his extradition is necessarily one of law, and in accordance with the great weight of authority upon this question, in my opinion, should at all times be open to judicial inquiry, on a writ of *habeas corpus*, as to whether or not he is illegally restrained of his liberty. If the law were otherwise, why accompany the requisition warrant with any other papers at all? If a defendant is unjustly accused, or illegally charged, or restrained of his liberty, certainly justice demands that he should not be deprived of his liberty or removed hundreds or thousands of miles, as the case may be, there to wait or be put on trial on an illegal charge. The sooner his detention, if it be illegal, is so ascertained, the better.

If, on the other hand, the defendant is properly charged with crime, and the requisition papers on which the executive warrant is issued are valid and sufficient, a judge or court will always remand the defendant to the custody of the agent to whom the executive warrant commits him. I heartily agree with the opinion rendered in the case of

*United States* v. *Greenhut* (D. C.), 51 Fed. 206, wherein, on a hearing for the extradition of the defendant on an application for a warrant of removal, the court said: "In a country of such vast extent as ours it is not a light matter to arrest a supposed offender, and, on the mere order of an inferior magistrate, move him hundreds and maybe thousands of miles for trial. The law wisely provides for the previous sanction of a judge to such a removal. Mere technical defects in an indictment should not be regarded, but a district judge, who should order the removal of a prisoner when the only probable cause relied on or shown was an indictment, and that indictment failed to show an offense against the United States, would misconceive his duty and fail to protect the liberty of the citizen."

While I believe in paying the highest respect to the requisition warrants of chief executives of other states, and believe that any executive would hesitate before issuing his requisition warrant knowingly without believing that sufficient and legal grounds existed on which to ask the extradition of a defendant, yet my regard for the sacred writ of *habeas corpus* is such that I would jeopardize the retention of the good-will of anyone rather than nullify, modify, or limit in any way the prerogatives of this great writ—the greatest bulwark of our liberty—and which gives every person under our glorious government the right to appeal to a judicial tribunal when restrained of his liberty, and privileged to have the party in whose custody he is detained directed to produce his body, and show by what right or authority of law he is depriving him of his liberty.

In *Roberts* v. *Reilly*, 116 U. S. 80, 6 Sup. Ct. 291, 29 L. Ed. 544, the Supreme Court of the United States, in passing upon the right of a governor to honor a requisition and issue his warrant thereon, says: "It must appear, therefore, to the governor of a state to whom such a demand is presented, before he can lawfully comply with it: First, that the person demanded is substantially charged with a crime against the laws of the state from whose justice he is alleged to have fled by an indictment or an affidavit certified as authentic by the governor of the state making the demand;

and, second, that the person demanded is a fugitive from the justice of the state the executive authority of which makes the demand. The first of these prerequisites is a question of law and is always open upon the face of the papers to judicial inquiry on an application for a writ of *habeas corpus*."

The Supreme Court of Iowa, in the case of *Jones* v. *Leonard*, 50 Iowa, 110, 32 Am. Rep. 116, in an extradition proceeding said: "The governor of this state is not clothed with judicial powers, and there is no provision of the Constitution or of the laws of the United States, or of this state, which provides that his determination is final and conclusive in the case of the extradition of a citizen. In the absence of such provision we hold that the decision of the governor only makes a *prima facie* case; that it is competent for the court in a proceeding of this character to inquire into the correctness of his decision and discharge the prisoner."

And in line with these decisions I find the great weight of authority is that in *habeas corpus* proceedings a judge or tribunal may go behind the executive warrant and examine into the sufficiency of the papers upon which it is based and in particular the indictment or complaint upon which the requisition is made and the executive warrant issued, and, in case the papers are fatally defective and insufficient, to discharge the prisoner. (*In re Terrell*, 51 Fed. 213; *In re Corning*, 51 Fed. 205; *People* v. *Brady*, 56 N. Y. 182; *Jones & Atkinson* v. *Leonard*, 50 Iowa, 106, 32 Am. Rep. 116; Church on *Habeas Corpus*, pp. 821–869; *Ex parte Tod*, 12 S. D. 386, 81 N. W. 637, 47 L. R. A. 566, 76 Am. St. Rep. 616; *In re Cook*, 49 Fed. 839; *Ex parte Hart*, 63 Fed. 249, 11 C. C. A. 165; *In re Mohr*, 73 Ala. 503, 49 Am. Rep. 63; *Hartman* v. *Aveline*, 63 Ind. 353, 30 Am. Rep. 217; *People ex rel. Corkran* v. *Hyatt*, 172 N. Y. 176, 64 N. E. 825, 60 L. R. A. 774, 92 Am. St. Rep. 706; *People ex rel.* v. *Donohue*, 84 N. Y. 438; *Hyatt* v. *People, ex rel. Corkran*, 188 U. S. 691, 23 Sup. Ct. 456, 47 L. Ed. 657.)

In that the indictment is the heart of this proceeding and the basis on which this case must stand or fall, let us examine the indictment in the light of the statute on which it is founded.

The indictment on which petitioner is held is as follows:

"District Court of the County of Plymouth. State of Iowa against Ralph E. Waterman. February Term, 1907. State of Iowa, Plymouth County, ss.: The grand jury of the County of Plymouth, in the name and by the authority of the State of Iowa, accuse Ralph E. Waterman of the crime of obtaining money by false pretenses in violation of section 5041 of the Code of Iowa, committed as follows: The said Ralph E. Waterman, on or about the 5th day of August in the year of our Lord one thousand nine hundred and four, in the County of Plymouth and State of Iowa aforesaid, then and there being in said county and state, and then and there being an agent and director and trustee of the Sioux City and Rock Springs Coal Mining Company, a corporation organized and doing business under the laws of the State of Wyoming, and then and there duly authorized to represent said company, and then and there intending unlawfully, feloniously, designedly, and by false pretenses to cheat and defraud one Andrew Kloster, did then and there unlawfully, feloniously, falsely, knowingly, and designedly pretend and state unto the said Andrew Kloster that the said Sioux City and Rock Springs Coal Mining Company was then and there a corporation with a fully paid up capital stock of $500,000 of the value of $500,000; that said corporation had practically inexhaustible quantities of bituminous coal and that its quality was of the best; that an analysis of the coal of said company showed that it was the equal or better than the Rock Springs and Hocking Valley coals; that he then and there said that said corporation was the owner of 800 acres of coal land in Wyoming upon which it was opening a coal mine; that he then and there pretended and stated that the following was a correct analysis of the said several coals, to wit:

*Analysis of the Following Coals:*

|  | Rock Springs. | Hocking Valley. | Mammoth Vein. |
|---|---|---|---|
| Moisture | 4.32% | 5.00% | 6.77% |
| Volatile matter | 44.00% | 32.80% | 38.95% |
| Fixed carbon | 50.05% | 53.15% | 53.21% |
| Ash | 1.63% | 9.05% | 1.07% |
| Sulphur | 0.00% | 0.94% | 0.59% |

"That the vein of coal was twenty feet thick; that said corporation had made ample arrangements for transportation facilities; that the Union Pacific Railroad Company, upon whose line the said corporation then owned a mine, was anxious to have all the tonnage it could obtain from said corporation; that said railroad company had agreed to transport coal from the mine of said corporation in Wyoming; that there were no elements of chance or uncertainty regarding said coal proposition; that said company had been organized by careful, conservative business men, with the sole view of making money for its stockholders; that all the money which had theretofore been derived from sales of the stock of said company had been invested and were then being invested in the development of a coal mine which he then represented that said company was opening and equipping in the State of Wyoming; that all the money which should be derived from the sale of stock unto the said Kloster would be invested in the equipment of said mine; that machinery had been purchased to operate said mine; that relying on said false pretenses and statements of the said Waterman, he, the said Kloster, then and there bought five hundred shares of the capital stock of said Sioux City and Rock Springs Coal Mining Company, which the said Ralph E. Waterman then and there pretended were of the par value of $500, and paid therefor the sum of $250; that the value of said stock was not then $500, but in truth and in fact it was not to exceed $100; that all of the foregoing pretenses, statements, and representations so made by the said Ralph E. Waterman unto the said Andrew Kloster were then and there both false, and said Sioux City and Rock Springs Coal Mining Company did not then have any title whatever to said land in Wyoming and did not have a capital stock of $500,000 fully paid up and of the value of $500,000, but that said stock had been paid for by some leases of coal declaratory statements which had no value whatever at that time; that said corporation was not the owner of any bituminous coal whatever, its coal being lignite; that the quality of said coal was not the best, but that it was inferior to the best coals; that the analysis of said coal was false, and that said coal

did not analyze so as to make a favorable comparison with the Rock Springs and Hocking Valley coal in respect to moisture and fixed carbon; that the coal of said corporation then contained at least 15% of moisture, and did not contain in excess of 44% of fixed carbon; that the vein of coal of said company was not twenty feet thick, but was only eleven feet thick; that said corporation had not arranged with the Union Pacific Railroad Company or with any other carrier to transport the coal which it intended to mine; that the Union Pacific Railroad Company was not then anxious to have any tonnage whatever from said corporation, but in truth and in fact absolutely refused to haul the coal of said corporation; that there were then many elements of chance and uncertainty regarding said coal proposition in this, that said corporation then and there had no title whatever to any land, had made no arrangement for transportation or equipment, and had not money enough in the treasury to make such arrangements; that said company was not organized by careful, conservative business men, and was not organized to make money for its stockholders, but only for the purpose of selling stock; that the money derived from the sales of stock were not invested in the development and equipment of the mine of said corporation, and no machinery was purchased to operate the same; that perhaps 30% of the money derived from the sale of stock was used to develop the mine, and that all the remainder was kept by said Waterman and his associates and converted to his own use, all of which he, the said Waterman, then and there well knew, and who then and there made the aforesaid false and fraudulent representations, statements, and pretenses, with the intent then and there and thereby to cheat and defraud the said Kloster of said sum of money, to wit, $250 as aforesaid, contrary to the statutes in such cases made and provided and against the peace and dignity of the State of Iowa. [Signed] J. T. Keenan, County Attorney of Plymouth County, Iowa."

It was stipulated between counsel and admitted in evidence that the statute upon which this indictment was founded is as follows: "If any person designedly and by false pretense,

or by any privy or false token, and with intent to defraud, obtain from another any money, goods or other property, or so obtain the signature of any person to any written instrument, the false making of which would be punished as forgery, he shall be imprisoned in the penitentiary not more than seven years, or be fined not exceeding five hundred dollars, or imprisoned in the county jail not exceeding one year, or both such fine and imprisonment." (Code of Iowa, Annotated, 1897, p. 1962, sec. 5041.) The law is thoroughly established, not only by the common law, but also under constitutional and statutory provisions in all jurisdictions, that there can be no conviction for or punishment of a crime without a formal and sufficient accusation; that, in the absence thereof, a court acquires no jurisdiction whatever, and if it assumes jurisdiction such trial and conviction would be a nullity; that the accusation must charge an offense; that it must charge the particular offense for which the accused is to be tried, and it must be made in the particular form and mode required by the law. And the sixth amendment to the Constitution of the United States declares that "in all criminal prosecutions, the accused shall enjoy the right to * * * be informed of the nature and cause of the accusation." In the construction of statutes against false pretenses the courts are uniform in their opinion that these statutes must, as against the defendants, be strictly construed, and that nothing not within their words will be held within their meaning; while, on the other hand, in favor of defendants, the construction is liberal.

An examination of the above statute upon which this indictment is founded discloses that one of the essential ingredients of the crime sought to be alleged is that the party making the fraudulent representations must "obtain from another * * * money, goods or other property," and an examination of the indictment will reveal that nowhere within said instrument is it alleged that the petitioner Waterman parted with any stock to Kloster, the complaining witness, or to any one else, or that said Waterman obtained or received, directly or indirectly, from Kloster or any one else any money or thing of value in consideration of any

stock which Kloster might have purchased by reason of any of the representations of Waterman. Nor does it anywhere appear in the indictment that Kloster purchased from any agent of said Waterman, or from the company which he is alleged to have misrepresented, any of the stock which said Waterman is supposed to have fraudulently misrepresented, or that said Waterman received from any agent or from the company, or from any one else, any part of the money alleged to have been spent by said Kloster in the purchase of the said stock. The indictment is entirely silent as to whom Kloster purchased any stock from and in that it does not specifically allege that the petitioner obtained from Kloster money or some other thing of value in consideration of the stock alleged to have been fraudulently represented by Waterman, and that Waterman obtained money or some other thing of value by reason of the said alleged false pretenses, the indictment does not legally charge the crime intended to be alleged, or any crime at all, against Waterman, and is therefore fatally defective and void. The authorities are uniform in holding that the obtaining and possession of something of value is an essential ingredient of the crime of obtaining money, goods or other property, under false pretenses, and where this essential ingredient is lacking there is no crime. (*State* v. *Anderson*, 47 Iowa, 142; *State* v. *McGinnis*, 71 Iowa, 685, 33 N. W. 338; *State* v. *Clark*, 71 Iowa, 30, 33 N. W. 340; *Bracey* v. *State*, 64 Miss. 26, 8 South. 165; *Jamison* v. *State*, 37 Ark. 445, 40 Am. Rep. 103; *Willis* v. *People*, 19 Hun, 84; *State* v. *Lewis*, 26 Kan. 123; *Connor* v. *State*, 29 Fla. 455, 10 South. 891, 30 Am. St. Rep. 126; *In re Lucre*, 23 Am. Dig. col. 694.)

The indictment is faulty in other respects. For instance, it is a well-settled rule of law that an indictment for the obtaining of money or other thing of value by false pretenses must state with the same certainty the money or thing of value alleged to have been fraudulently obtained, and be pleaded with the same legal precision as is required in an indictment for larceny. The indictment in the present case nowhere alleges what character of money was alleged to have been fraudulently obtained, and, in accordance with

the following authorities sustaining the rule above named of pleading an indictment for obtaining money under false pretenses, is also defective: *People* v. *Ball*, 14 Cal. 101, 73 Am. Dec. 631; *Merwin* v. *People*, 26 Mich. 298, 12 Am. Rep. 314; *Smith* v. *State*, 33 Ind. 159; *Jamison* v. *State*, 37 Ark. 445, 40 Am. Rep. 103; *Connor* v. *State*, 29 Fla. 462, 10 South. 891, 30 Am. St. Rep. 126; *Lord* v. *State*, 20 N. H. 404, 51 Am. Dec. 231; *Treadway* v. *State*, 37 Ark. 443; *Sullivan* v. *State*, 44 Fla. 155, 32 South. 106.

For the foregoing reasons I am of the opinion that the indictment on which the requisition of the Governor of Iowa is based is fatally defective and void, and that the executive warrant issued by the Governor of Nevada upon the said requisition warrant of the Governor of Iowa was issued without authority of law.

It is therefore ordered that the petitioner be discharged forthwith from custody, and that his bondsmen be released of all responsibility by reason of the bond furnished in accordance with an order of this court made pending the determination of this proceeding.