WOODS *v.* THE STATE.

CRIMINAL LAW.—*Duty of Coroner Holding Inquest.*—*Testimony Must be in Writing.*—Where a coroner of this State is holding an inquest upon the body of a decedent "supposed to have come to his death by violence or casualty," it is his duty, under the provisions of sections 8 and 9 of the act of May 27th, 1852, "prescribing the powers and duties of coroners," 2 R. S. 1876, p. 20, to cause all testimony given before him by witnesses to be reduced to writing, and subscribed by them respectively.

SAME.—*Presumption.*—*Parol Evidence as to Testimony Before Coroner.*—*Impeaching Witness.*—*Murder.*—The law conclusively presumes, that, in such case, the coroner has duly performed his whole duty, by causing all of such testimony to be reduced to writing; and, unless the proper foundation be laid for secondary evidence, parol evidence of the testimony given before the coroner, by any such witness, is inadmissible, even to impeach evidence given by him as a witness on the trial of a defendant indicted for the murder of the person over whose body such inquest was held.

SAME.—*When Defendant's Evidence before Coroner is Admissible.*—Where the defendant in such case has testified in his own behalf, the written statement of evidence given by him as a witness on such inquest is admissible in evidence to contradict him.

From the Vanderburgh Circuit Court.

*P. Maier*, *J. A. Coleman*, *J. E. McDonald*, *J. M. Butler*, *F. B. McDonald* and *G. C. Butler*, for appellant.

*T. W. Woollen*, Attorney General, and *J. Brownlee*, Prosecuting Attorney, for the State.

NIBLACK, J.—This was a prosecution for murder in the first degree.

George Woods, the defendant below and appellant here, was indicted for killing Millie M. Hobbs, on the 15th day of July, 1877.

The jury, to which the cause was submitted for trial, returned a verdict, finding the defendant guilty of murder in the second degree, and fixing his punishment at imprisonment in the State's prison during his natural life.

After considering and overruling a motion for a new trial, the court rendered a judgment of conviction against the defendant upon the verdict.

The evidence showed that the deceased, with her husband, James D. Hobbs, occupied one portion, and one Alice Manley, a courtesan, occupied another portion, of a double tenement house on Eighth street, between Vine and Sycamore streets, in the city of Evansville; that the defendant, who was a frequent visitor of Miss Manley's, and who had spent the forenoon with her, returned to her house at somewhere from five to six o'clock in the afternoon of Sunday, July 15th, 1877, in a drunken and disageeable condition, and remained there until near the time at which the deceased was killed; that after a while Dan Groves, an acquaintance of defendant's, dropped in at Miss Manley's, and, by some time after eight o'clock, Mrs. Hobbs and two or three other persons had also assembled at Miss Manley's house, Mrs. Hobbs being on friendly and familiar terms with Miss Manley, and accustomed to being frequently in her house; that the defendant had, in the meantime, become offended with Miss Manley about some trivial matter, and was flourishing a knife in his hand, in a rather reckless and menacing manner, saying that Miss Manley would have to kill him or else he would kill her; that, about that time, one Frank Marsh, also a suitor of Miss Manley's and a rival of the defendant's, came in, and, perceiving the

·situation, gave the defendant a kick over the left eye, from which blood flowed quite freely; that Grover then took the ·defendant out into the back yard, and·left him, as he testified, near an appletree, Marsh and Miss Manley locking the back door after them; that, after Groves and the defendant went out, the company dispersed, Marsh and Miss Manley going out to take a walk, and Mrs. Hobbs stopping somewhere near the front door, where there was little if any light; that, at that time, Mrs. Hobbs' husband was sitting by himself in a chair near the yard fence, fifteen or twenty feet from the house; that, in a very few minutes after Marsh and Miss Manley had gone upon the street, Mrs. Hobbs was heard to give two or three screams, and, when persons began to assemble, she was in her husband's arms, both bespattered with blood, she speechless and gasping, only living a few minutes afterward; that the husband, seemingly overwhelmed by the sudden death of his wife, first told one witness that Marsh or Morris had killed her, and not long afterward told another witness that the defendant had killed her ; that an inquest was held over the body of the deceased the next day, on which occasion the·defendant, Dan Groves, Alice Manley and others.testified as witnesses before .the coroner's jury, and their testimony was taken down in writing and returned with the verdict of the jury, which was that the deceased came to her death by reason of a stab on her body, inflicted with a knife.

The defendant was arrested at his boarding house, the same night of the alleged murder.

On the trial, Hobbs, the husband, testified, among other things, that, when his wife screamed, she threw up her arms and rushed towards him, saying, " Jim, George " (the defendant) " has killed me !"

In his testimony on the trial, the defendant denied·the killing, saying, that, after he was put into the back yard, he went out onto one of the streets, through the alley, and never afterward saw the deceased while alive.

The prosecution was conducted against the defendant, upon the theory that he, after being taken into the back yard, found his way by some means to the front part of the house, where he purposely killed Mrs. Hobbs, supposing her to be Alice Manley.

The defence was based upon the theory that it was the husband of Mrs. Hobbs who killed her, relying upon some evidence tending to prove that the relations between her and her said husband had become disagreeable and somewhat threatening, on account of the associations into which she had fallen.

No witness pretended to have seen the fatal blow struck, and the evidence tending to sustain the respective theories of the parties was entirely circumstantial.

There was a conflict in the evidence as to many of the circumstances relied upon by each party; as a consequence the credibility of several of the witnesses became material questions upon the trial, and amongst those the credibility of whose testimony was attacked were Miss Manley, Dan Groves and the defendant, who testified as witnesses for the defendant.

In rebuttal of the defendant's evidence, and touching such questions of credibility, Michael Mackedon, one of the jurors upon the inquest, was introduced as a witness, and, over the objection of the defendant, testified as to his recollection of what Alice Manley, Dan Groves and the defendant respectively had said, regarding certain matters in controversy, in their examinations before the coroner's jury.

The court, also, in rebuttal, permitted Christ. Schmidt, another of the jurors upon the inquest, over the objection of the defendant, to testify as to his recollection of what Dan Groves and the defendant had stated concerning such matters in controversy, in their said respective examinations before the coroner's jury.

The court, in further rebuttal, also permitted John Deacon, another of the jurors at the inquest, over the objection of the defendant, to testify as to his recollection of what Dan Groves had stated in his examination before the coroner's jury, as above set forth.

The defendant's objection to the testimony of Mackedon, Schmidt and Deacon, given as above, was based upon the ground that parol evidence was not admissible to show what Alice Manley, Dan Groves and the defendant, or either of them, had sworn to before the coroner's jury, when it appeared that their testimony before that jury had been taken down in writing.

The act prescribing the powers and duties of coroners, and providing for holding inquests upon the bodies of persons supposed to to have come to their death by violence or casualty, enacts, that " All persons desirous of being heard, shall be examined as witnesses, and the coroner may cause witnesses to be summoned by subpœna issued by him, * * * who shall answer all questions asked them on oath, touching such death." Also, that " All testimony shall be in writing, subscribed by the witnesses," etc. 2 R. S. 1876, p: 21, secs. 8 and 9.

In volume 1, sec. 227, of Greenleaf's Evidence, it is said, that " As the statutes require that the magistrate shall reduce to writing the whole examination, or so much thereof as shall be material, the law conclusively presumes, that, if any thing was taken down in writing, the magistrate performed all his duty by taking down all that was material. * * * And if it remains uncertain whether it was reduced to writing by the magistrate or not, it will be presumed that he did his duty, and oral evidence will be rejected." 2 Phillipps Evidence, 966 ; Starkie Evidence, 229, 651 ; *Regina* v. *Weller*, 2 Car. *&* K. 223 ; *Rex* v. *Fearshire*, 1 Leach, 3d ed., 240 ; *Hinxman's Case*, 1 Leach, 3d ed., 349, note *a.*

The rule, that parol evidence can not be given of any matter which has been reduced to writing, unless the writing can not be introduced, is too well established to require the citation of authorities to sustain it.

Having in view the authorities above cited and the principles which they enunciate, we are constrained to hold that the court erred in permitting Mackedon, Schmidt and Deacon to testify as they did, as to what was sworn to before the coroner's jury.

It is insisted by counsel that what was testified to by the defendant before the coroner's jury was not admissible against him in any way, or for any purpose, and authorities are cited to sustain that position, but we think those authorities are not applicable to cases where defendants in criminal cases are permitted to testify, and do testify in their own behalf. When a defendant testifies, his testimony is subject to the same tests as are applicable to other witnesses.

In a case so closely contested, and resting so much upon circumstantial evidence, and at the same time of so much importance as the one before us, we feel it our duty to apply to it the essential rules of evidence with reasonable strictness, in our review of the proceedings below.

Other questions are discussed by counsel, but, as the judgment must, at all events, be reversed, we have not considered them.

The judgment is reversed, and the cause remanded for a new trial.

The clerk will give the proper notice for the return of the prisoner.