---

## In re TERRELL.

### UNITED STATES v. GREENHUT et al.

#### (Circuit Court, S. D. New York. June 28, 1892.)

1. CRIMINAL LAW—HABEAS CORPUS—JURISDICTION OF CIRCUIT COURTS—REMOVAL OF PRISONER.

   Where a prisoner, arrested under warrant based upon an indictment in a distant state and district, is held pending an application to the district court for a warrant of removal for trial, the circuit court of the district in which he is held has authority on *habeas corpus* to examine such indictment, and to release the prisoner, if in its judgment the indictment should be quashed on demurrer.

2. ILLEGAL COMBINATIONS—CONTRACTS IN RESTRAINT OF TRADE—INDICTMENT.

   Petition by Herbert L. Terrell for a writ of *habeas corpus*. Prisoner discharged.

*Thos. Thacher* and *Elihu Root*, for petitioner.

*Edward Mitchell,* Dist. Atty., and *Maxwell Evarts,* Asst. Dist. Atty., for the United States.

LACOMBE, Circuit Judge. The petitioner was arrested in this district upon a warrant issued by a United States commissioner here. The warrant was based upon an affidavit, which was itself based solely upon the fourth count in an indictment found by the grand jury in the district court of the United States for the district of Massachusetts. The petitioner being in custody of the United States marshal to await the order of the district judge, under Rev. St. § 1014, for his removal to the district of Massachusetts, writs of *habeas corpus* and *certiorari* were issued, to which returns have been made. It is not disputed by the district attorney that it is not only the right, but the duty, of the district court, before ordering removal, to look into the indictment, so far as to be satisfied that an offense against the United States is charged, and that it is such an offense as may lawfully be tried in the forum to which it is claimed the accused should be removed; and the same right and duty arises upon *habeas corpus,* whether the petitioner is held under the warrant of removal issued by the district judge whose decision is thus reviewed, or under the warrant of the commissioner to await the action of the district judge. The later decisions of the circuit courts abundantly establish this proposition. *In re Buell,* 3 Dill. 116; *In re Doig,* 4 Fed. Rep. 193; *U. S.* v. *Brawner,* 7 Fed. Rep. 86; *U. S.* v. *Rogers,* 23 Fed. Rep. 658; *U. S.* v. *Fowkes,* 49 Fed. Rep. 50. This practice was followed in *Re Pallisser,* 136 U. S. 257, 10 Sup. Ct. Rep. 1034, and approved by the supreme court in *Horner* v. *U. S.,* 143 U. S. 207, 12 Sup. Ct. Rep. 407. There is good cause for holding that this power should be exercised liberally, whenever the judge before whom the questions are raised, on application for a warrant of removal, or on *habeas corpus,* is satisfied, from the face of the indictment, that were such indictment before him for trial, and demurred to, he would quash it. This is a country of vast extent, and it would be a grave abuse of the rights of the citizen if, when charged with alleged offenses committed perhaps in some place he had never visited, he were removable to a district thousands of miles from his home, to answer to an indictment fatally defective, on any mere theory of a comity which would require the sufficiency of the indictment to be tested only in the particular court in which it is pending. Nor should the mere novelty of the points raised be held to preclude the court, before which comes the question of removal, from passing upon them, when it has no doubt as to how it would pass upon them if the cause were pending before it. If the questions are of such a character that it is thought desirable that the opinion of an appellate court should be obtained, such a proceeding as this is the more appropriate way in which to raise them, for a decision here adverse to the government is reviewable by appeal; but a similar decision on the trial is final, as the government cannot appeal from a criminal judgment. *U. S.* v. *Sanges,* 144 U. S. 310, 12 Sup. Ct. Rep. 609.

The points of law arising upon this indictment were all carefully considered by Judge RICKS in his opinion (filed June 11, 1892, N. Dist. Ohio) on application for a removal in *Re Corning*, 51 Fed. Rep. 205. In that opinion I entirely concur; and the district attorney, apparently admitting its application, has discussed only the questions arising under the fourth count, urging that the learned judge did not fully apprehend the averments of that count, and therefore erred in holding that no contract was averred by which the dealers obligated themselves to purchase exclusively from defendants, and to sell at the prices defendants fixed. It is insisted that the paper set out in the fourth count became a contract on May 7, 1892, when the purchasers signed it, and that it is distinctly charged that defendants made such contract "in restraint of trade and commerce among the several states" on May 7, 1892. But, though it be conceded that the contract set forth in the indictment was made on that day, it does not follow that it was a contract in restraint of trade. The only trade which it is pretended was at all curtailed or affected in any way was the trade of Kelly & Durkee in distillery products between September 23, 1891, and May 7, 1892. During that period they bought such products only from certain named dealers in a limited number of states, and sold only at prices fixed by the defendants; but they did so only because they chose to,—because the offer of a rebate to purchasers who would thus conduct their business was an inducement operating upon their self-interest. No obligation of any kind constrained them so to do; during that entire period, certainly, no contract restrained them, for there was no contract in existence. They were entirely free to buy from whom they pleased, and to sell at any price they chose. The statute does not prohibit the offering of special inducements to such purchasers as shall make all their purchases from a single concern, and shall sell only at the prices fixed by it, even though those inducements be so favorable as to accomplish their object. It is not the actual restraint of trade (if such be restraint of trade) that is made illegal by the statute, but the making of a contract in restraint of trade, of a contract which restrains or is intended to restrain trade. It is difficult to understand upon what principle it can be contended that trade is restrained by a contract, when no contract exists. That, when the trade in distillery products which Kelly & Durkee carried on between September 16, 1891, and May 7, 1892, was restrained, (if restrained it were,) there was no contract in existence, is conclusively admitted on the face of the indictment itself, which charges the statutory offense, to wit, the making of a contract, etc., as committed on May 7, 1892. The petitioner should be discharged.