[Crim. No. 278.    Third Appellate District.—September 30, 1914.]

## In the Matter of the Application of REAN M. SHOEMAKER for a Writ of Habeas Corpus.

EXTRADITION—SUFFICIENCY OF PAPERS—POWER OF COURTS TO GO BEYOND EXECUTIVE WARRANT AND DETERMINE.—Upon the application of a person held for extradition as a fugitive from justice to be discharged on *habeas corpus*, the court is empowered to go beyond the executive warrant and examine and determine the question of the sufficiency of the papers upon which the executive has acted in complying with the demand of the demanding state.

ID.—DECISION OF GOVERNOR ONLY PRIMA FACIE CORRECT.—The decision of the governor makes only a *prima facie* case, and it is competent for a court on *habeas corpus* to inquire into the correctness of his decision and discharge the prisoner.

ID.—EVIDENCE ON WHICH FUGITIVE IS HELD—RIGHT OF COURTS TO REVIEW.—Where the evidence adduced before the governor upon the

question whether the prisoner whose extradition is sought is a fugitive from justice of the demanding state is in substantial conflict, the finding of the executive that he is such fugitive will not be set aside by the courts, but such question of fact is a subject which may be reviewed by the courts, and upon which the prisoner may be discharged from custody, if it is made to appear that he was not within the borders of the demanding state at practically the precise time at which the alleged crime upon which he is proposed to be extradited was committed.

ID.—PREREQUISITES TO EXTRADITION OF FUGITIVE—SHOWING NECESSARY TO BE MADE BY DEMANDING STATE.—It must appear to the governor of a state to whom a demand in extradition proceedings is presented, before he can lawfully comply with it: 1. That the person demanded is substantially charged with a crime against the laws of the state from whose justice he is alleged to have fled by an indictment or an affidavit certified or authenticated by the governor of the state making the demand; and 2. That the person demanded is a fugitive from the justice of the state the executive authority of which makes the demand.

ID.—QUESTIONS OF LAW AND OF FACT REVIEWABLE ON HABEAS CORPUS.— The first of these prerequisites is a question of law, and is always open upon the face of the papers to judicial inquiry, on an application for a discharge under a writ of *habeas corpus;* the second prerequisite involves a question of fact whether the decision of the governor that the prisoner is a fugitive from the justice of the demanding state is well founded or justified, and it also is subject to judicial review on *habeas corpus*.

ID.—JUDICIAL REVIEW OF ACTION OF EXECUTIVE—SUFFICIENCY OF EVIDENCE—DISCHARGE OF PRISONER.—As the executive, before he can authorize the extradition of a resident of his state to another for trial on a criminal charge, must be shown by competent proof that the person whose extradition is sought is a fugitive from the justice of the demanding state, it is within the legal competence of courts to review the action of the executive in that respect, and to discharge the prisoner if it is found that the exercise of the executive authority, so far as that fact is concerned, was predicated upon insufficient proof, or in the presence of evidence offered by the prisoner sufficient to destroy the force of the *prima facie* showing by the state upon that point.

ID.—PRESENCE OF ACCUSED WITHIN DEMANDING STATE AT TIME OF CRIME—REVIEW OF QUESTION.—The right to review on *habeas corpus* the question whether or not the petitioner was in the demanding state when the crime for which his extradition is requested was committed, is not precluded on the ground that it involves the question of his guilt or innocence of the crime, as attempting to set up an *alibi*, for the question presented is not whether the petitioner was present at the scene of the alleged crime when it was committed,

but whether he was within the borders of the demanding state on that day, and if it is not thus shown, he is entitled to his discharge.

ID.—JURISDICTIONAL FACT—PRESENCE OF PRISONER WHEN CRIME COMMITTED.—Before a warrant of extradition can be sustained, it must appear as a jurisdictional fact that the prisoner is a fugitive from justice; that is, it must be shown that he was actually present in the demanding state when the crime was committed. Mere constructive presence is not enough.

ID.—INDICTMENT ACCOMPANYING DEMAND FOR FUGITIVE—ALLEGATION AS TO DATE OF CRIME—ABSENCE OF ACCUSED AT TIME ALLEGED.— Where an indictment accompanying a demand for extradition charges the commission of a crime without qualification and unequivocally on a certain date, and by neither specific nor general language pretends to fix or allege any other date, it must clearly appear by competent proof, direct or circumstantial, that the accused was in the demanding state on that day, and if it is not thus shown, he is entitled to be discharged.

ID.—FLIGHT OF ACCUSED—INDICTMENT AS EVIDENCE.—An indictment charging a person with the commission of a· certain crime in the demanding state, constitutes, if any at all, very remote evidence of flight or of the fact that the accused is a fugitive from justice.

ID.—PRESENCE OF ACCUSED IN DEMANDING STATE AT TIME OF CRIME— PROOF CONCERNING.—If in support of the application for a warrant of extradition, the only affidavits presented are those which aver the presence of the accused in the demanding state eighteen days prior and three weeks subsequent to the date alleged in the indictment, such showing falls short of satisfactorily establishing that he is a fugitive from justice; but if it is conceded that such affidavits, together with the conclusion stated in the affidavit of the state's attorney that the accused "is a fugitive from justice," are sufficient to make out a *prima facie* case, yet the same can be overcome by a slight adversary showing, and is overcome by affidavits on behalf of the accused establishing that he was not in the demanding state at any time within two weeks of the alleged date of the crime.

ID.—DATE OF CRIME—NECESSITY OF SHOWING OR ESTABLISHING EXACT TIME.—There is no analogy between the general proposition that upon the trial of one charged with crime it is not required that the people shall prove, in order to sustain a conviction, that the crime was committed at the precise date specified in the indictment, and the proposition involved here, where, to constitute a person a fugitive from justice, it is indispensably necessary to show that the person whose extradition is sought was in the demanding state at the exact time of the commission of the offense with which he is charged.

ID.—HABEAS CORPUS—REHEARING—POWER TO GRANT.—After judgment in *habeas corpus* proceedings, either remanding or discharging the

petitioner, the district court of appeal has no power to grant a re-hearing; and it is immaterial that he may be allowed to give bail for his appearance pending the hearing of his application.

Id.—Finality of Judgment in Habeas Corpus.—A proceeding in *habeas corpus* is finally and definitely ended by judgment.

APPLICATION for a Writ of Habeas Corpus.

The facts are stated in the opinion of the court.

C. E. McLaughlin, and Beverly L. Hodghead, for Petitioner.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

HART, J.—The petitioner is held in custody and restrained of his liberty, at the city of Sacramento, by one Charles H. Harrington, agent of the state of Illinois, under the alleged authority of an executive warrant issued by the governor of the state of California on a requisition from the governor of said state of Illinois, authorizing the removal of the petitioner to the latter state to answer to an alleged indictment purporting to charge him with the crimes of conspiracy, larceny, and receiving stolen goods, alleged to have been committed in the city of Chicago, said state of Illinois, on the eighth day of June, 1912.

It is claimed that the petitioner is so restrained of his liberty illegally, and his release from such restraint is asked through this proceeding on *habeas corpus* on the following grounds:

First: That the alleged indictment accompanying the demand of the Illinois executive for his extradition is void:

Second: That it is clearly made to appear that, at the time at which the crimes charged in the indictment are alleged to have been committed, the petitioner was not within the borders of the state of Illinois, and that he is not, therefore, a fugitive from justice.

Our conclusion is that the petitioner must be ordered discharged from his present restraint on the ground that the record before us clearly discloses that he was not in the state of Illinois at the time of the alleged commission of the crimes charged in the indictment. It will, therefore, be unnecessary to consider the point involving the challenge of the sufficiency of the indictment.

The source of the power of interstate extradition is to be found in article IV section 2 of the constitution of the United States, which reads: "A person charged in any state with treason, felony, or other crime, who shall flee from justice and be found in another state, shall, on demand of the executive authority of the state from which he fled be delivered up to be removed to the state having jurisdiction of the crime."

For the proper execution of said provision, Congress passed an act, providing: "Whenever the executive authority of any state or territory demands any person as a fugitive from justice of the executive authority of any state or territory to which such person has fled and produces a copy of an indictment found or an affidavit made before a magistrate of any state or territory charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the state or territory from which the person so charged has fled, it shall be the duty of the chief executive of the state or territory to which such person has fled to cause him to be arrested and secured and to cause notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive and to cause the fugitive to be delivered to said agent when he shall appear. If no such agent appears within six months from the time of the arrest the prisoner may be discharged. All costs or expenses incurred in the apprehending, securing or transmitting of such fugitive to the state or territory making said demand shall be paid by such state or territory." (U. S. Rev. Stats., sec. 5278, [U. S. Comp. Stats. 1901, p. 3597, U. S. Comp. Stats. 1913, sec. 10126, 3 Fed. Stats. Ann. p. 78].)

No question is raised here of the right of the courts, in a *habeas corpus* proceeding, to go beyond the executive warrant in a case of this character and examine and determine the question of the sufficiency of the papers upon which the executive has acted in complying with the demand of the demanding state or territory. That the courts may make full inquiry into such proceedings for the purpose of ascertaining and determining whether the executive warrant has, without legal justification, been issued, is firmly settled by a long line of decisions. For instance, in the case of *Jones* v. *Leonard,* 50 Iowa 110, [32 Am. Rep. 116,] it is said: "The governor of

this state is not clothed with judicial powers and there is no provision of the constitution or of the laws of the United States, or of this state, which provides that his determination is final and conclusive in the case of the extradition of a citizen. In the absence of such provision, we hold that the decision of the governor only makes a *prima facie* case; that it is competent for the court in a proceeding of this character to inquire into the correctness of his decision and discharge the prisoner.'' (See, also, *In re Terrell,* (Circuit Court,) 51 Fed. 213; *In re Corning,* (District Court) 51 Fed. 205; *People* v. *Brady,* 56 N. Y. 182; Church on *Habeas Corpus,* pp. 821–869; *Ex parte Tod,* 12 S. D. 386, 76 Am. St. Rep. 616, 47 L. R. A. 566, 81 N. W. 637] ; *In re Cook,* 49 Fed. 839; *Ex parte Hart,* 63 Fed. 249, [28 L. R. A. 801, 11 C. C. A. 165] ; *In re Mohr,* 73 Ala. 503, [49 Am. Rep. 63] ; *Hartman* v. *Aveline,* 63 Ind. 353, [30 Am. Rep. 217] ; *People* v. *Hyatt,* 172 N. Y. 176, [64 N. E. 825, 60 L. R. A. 774, 92 Am. St. Rep. 706] ; *People* v. *Donohue,* 84 N. Y. 438; *Hyatt* v. *New York ex rel. Corkran,* 188 U. S. 691, [47 L. Ed. 657, 23 Sup. Ct. Rep. 456] ; *In re Waterman,* 29 Nev. 288, [13 Ann. Cas. 926, 11 L. R. A. (N. S.) 424, 89 Pac. 291].)

While some of the cases hold (and we think properly) that, where the evidence adduced before the governor upon the question whether the prisoner whose extradition is sought is a fugitive from justice of the demanding state is in substantial conflict, the finding of the executive that he is such fugitive will not be set aside by the courts, nevertheless no doubt has ever been entertained that such question of fact is a subject which may be reviewed by the courts and upon which the prisoner may be discharged from custody if it be made to appear that he was not within the borders of the demanding state at practically the precise time at which the alleged crime upon which he is proposed to be extradited was committed. This proposition necessarily follows from the essential conditions upon which alone the executive of one state is authorized to comply with the request of the executive of another state or territory that a citizen or resident of the former state be surrendered to the jurisdiction of the latter, there to undergo trial for a public offense against the laws of the demanding state. As is said by the supreme court of the United States, in the case of *Roberts* v. *Reilly,* 116 U. S. 80, [29 L. Ed. 544, 6 Sup. Ct. Rep. 291], in considering the question of the right of the governor

to recognize and honor a requisition for the extradition of a resident of his state and to issue his warrant thereon: "It must appear to the governor of a state to whom such a demand is presented, before he can lawfully comply with it: 1 That the person demanded is substantially charged with a crime against the laws of the state from whose justice he is alleged to have fled by an indictment or an affidavit certified or authenticated by the governor of the state making the demand; and, 2. That the person demanded is a fugitive from the justice of the state the executive authority of which makes the demand.  The first of these prerequisites is a question of law and is always open upon the face of the papers to judicial inquiry, on an application for a discharge under a writ of *habeas corpus.*"  As to the second prerequisite, which involves a question of fact, the court deemed it unnecessary to go further than to say: "How far his (the executive's) decision may be reviewed judicially in proceedings on *habeas corpus,* or whether it is not conclusive, are questions not settled by harmonious judicial decisions, nor by any authoritative judgment of this court.  It is conceded that the determination of the fact by the executive of the state in issuing his warrant of arrest, upon a demand made on that ground, whether the writ contains a recital of an express finding to that effect or not, must be regarded as sufficient to justify the removal until the presumption in its favor is overthrown by contrary proof."

It will be observed that in that case the court in effect holds that the judicial review of proof offered in rebuttal of the *prima facie* showing involved in the finding of the executive that the prisoner is a fugitive from the justice of the demanding state will be made and that if thereupon it is considered sufficient to overthrow the presumption arising from the decision of the governor that the prisoner is such fugitive, he will be discharged on *habeas corpus.*  And we are unable to understand how the rule could be otherwise and be just.  It is, indeed, a necessary corollary of the second prerequisite as stated in the above opinion and without the existence and showing of which the governor would be without legal authority to comply with the request of the demanding state for the removal of the alleged fugitive to the latter state.  Indeed, if it is proper to review the action of the executive so far as is concerned the question of the sufficiency of the indictment

or affidavits to disclose that a crime has been committed, then there is no reason why it is not competent for the courts to review the question whether the decision of the governor that the prisoner is a fugitive from the justice of the demanding state is well founded or justified. The one prerequisite is as necessary and important as the other. The papers might clearly show that a crime had been committed—that is, they might, both in substance and form and with proper legal precision, state a public offense under the laws of the demanding state—and yet the evidence might be either clearly wanting in a showing that the prisoner was in the demanding state when the alleged crime was committed or affirmatively show beyond a reasonable doubt or even by a marked preponderance of the evidence that he was not in such state at that time. As we understand from counsel in this case, the governor of this state had some doubt as to whether both the propositions upon which the prisoner relies here for his release, said propositions having been urged before the executive, were or were not legally sound, but conceived that, since it is not strictly within the scope of the duties of the executive head of the government to judicially review and determine purely legal questions, it were better that the legal aspects of the proceedings here be remitted to the courts for their consideration and decision—a very proper view, we think; but, speaking generally, it is to be remarked that if the courts were confined in their review of the action of the governor in cases of this character to the consideration and determination alone of the question of the legal sufficiency in any respect of the papers—the indictment or affidavits—to state a public offense; if, in other words, the courts were to be concluded by the decision of the executive upon the question whether the prisoner was in fact a fugitive from the justice of the demanding state, it could easily be understood how a citizen or resident of one state could, without a satisfactory showing or upon virtually no showing at all that he had fled from the state requesting his removal thereto, be taken from his own state and transported to another, there to be subjected to a trial for a crime with which he had and could have had no connection whatsoever.

But it appears to be now quite generally conceded that, as the executive, before he can authorize the extradition of a resident of his state to another for trial on a criminal charge, must be shown by competent proof that the person whose ex-

tradition is sought is a fugitive from the justice of the demanding state, it is within the legal competence of the courts, to review the action of the executive in that respect and to discharge the prisoner if it be found and determined that the exercise of the executive authority so far as that fact is concerned, was predicated upon insufficient proof of said fact, or in the presence of evidence offered by the prisoner which should be held to be sufficient to destroy the force of the *prima facie* showing by the state upon that point.

In *Illinois ex rel. McNichols* v. *Pease,* 207 U. S. 100, [52 L. Ed. 121, 28 Sup. Ct. Rep. 58], Mr. Justice Harlan, voicing the views of the court, after declaring that a warrant of extradition in itself made out a *prima facie* case that the prisoner was a fugitive from justice of the demanding state and that the warrant could be reviewed on *habeas corpus,* said "One arrested and held as a fugitive from justice is entitled, of right, upon *habeas corpus,* to question the lawfulness of his arrest and imprisonment, showing by competent evidence, as a ground for his release, that he was not, within the meaning of the constitution and laws of the United States, a fugitive from the justice of the demanding state, and thereby overcoming the presumption to the contrary arising from the face of an extradition warrant." (See *Ex Parte Reggel.* 114 U. S. 642, [29 L. Ed. 250, 5 Sup. Ct. Rep. 1148]; *Hyatt* v. *New York ex rel. Corkran,* 188 U. S. 691, [47 L. Ed. 657, 23 Sup. Ct. Rep. 456]; *In re Mohr,* 73 Ala. 503, [49 Am. Rep. 63]; *Katyuga* v. *Cosgrove,* 67 N. J. L. 213, 50 Atl. 679; *Dodge* v. *Ellis,* 195 U. S. 626, [49 L. Ed. 350, 25 Sup. Ct. Rep. 791]; *Hartman* v. *Aveline,* 63 Ind. 344, [30 Am. Rep. 217]; *Tennessee* v. *Jackson,* 36 Fed. 259, [1 L. R. A. 370]; *Wilcox* v. *Nolze,* 34 Ohio St., 520; *Ex parte Dennison,* 72 Neb. 703, [117 Am. St. Rep. 817, 101 N. W. 1045]; *Dennison* v. *Christian,* 196 U. S. 637, [49 L. Ed. 630, 25 Sup. Ct. Rep. 795]; *State* v. *Schlachter,* 21 S. D. 276, 111 N. W. 566; *Ex parte Knowles,* 16 Ky. Law Rep. 263; *Commonwealth* v. *Superintendent etc.,* 220 Pa. St. 401, [21 L. R. A. (N. S.) 939, 69 Atl. 916]; 19 Cyc. 88; Spear on Extradition, p. 306.)   And it has been held that, although the evidence upon the question whether the prisoner was absent or present in the demanding state when the crime charged against him was committed is conflicting if, nevertheless, the court is convinced from the whole record that the fact that he is a fugitive from justice has not been satisfac-

torily shown, the prisoner will be discharged. (*People* v. *Mc-Laughlin*, 145 App. Div. 513, [130 N. Y. Supp. 458, 464].)

There is no merit in the contention of the attorney-general in the case at bar that the question whether the petitioner was or was not in the state of Illinois when the crime for which his extradition is requested by the latter state was committed cannot be reviewed upon *habeas corpus* because it involves the question of his guilt or innocence of said crime—that is, that by this proceeding he thus attempts to set up an *alibi*, an element which goes directly to the question of his guilt or innocence. The question presented in this proceeding is not whether the petitioner was present at the scene of the alleged crime when it was committed, but whether he was within the borders of the demanding state at the time said crime was committed. Obviously, if he was not in said state at said time, he cannot be a fugitive from justice within the meaning of the constitution and laws of the United States authorizing the extradition of fugitives from justice (*Hyatt* v. *New York ex rel. Corkran*, 188 U. S. 691, [47 L. Ed. 657, 23 Sup. Ct. Rep. 456]), and, although the investigation of that question necessarily involves the question of *alibi*, in a proceeding of this character it is a question of overruling importance and is to be considered, as before suggested, not for the purpose or with the view of solving the question of the guilt or innocence of the accused, but solely to determine whether he may lawfully be removed to the demanding state, where, perchance (it may well be suggested), he might be deprived of the privilege or opportunity of establishing an *alibi*, which might, if proved, exonerate him from the charge, by reason of the fact that witnesses by whom he could show he was not in Illinois when the crime was committed were beyond the jurisdiction of the courts of that state.

Replying, however, to a similar contention urged in the case of the *People* v. *McLaughlin*, the supreme court of New York, upon the authority of a large array of cases therein cited, said: "In *habeas corpus* proceedings (*People, ex rel. Ryan* v. *Conlin*, [15 Misc. Rep. 303, 36 N. Y. Sup. 888] the prisoner gave proof that he was not in the demanding state at the time of the commission of the crime. The court declared that, inasmuch as this proof went to establish an *alibi*, it was a matter of defense at the trial, and could not be considered on *habeas corpus* to review the warrant of extradition. The reason

given by that court for this conclusion was that it was settled that in proceedings to review a warrant of extradition the guilt or innocence of the prisoner could not be inquired into. (*Matter of Clark,* 9 Wend. (N. Y.) 212.)    Therefore, it is argued, as an *alibi* is concerned with the question of guilt or innocence, it cannot be considered on *habeas corpus.*    It seems to us that this reasoning is clearly unsound.  · An *alibi*, in its general features, consists of proof that the defendant was not at the scene of the crime at the time of its commission.    Proof that the prisoner was not in the demanding state at the time of the commission of the crime is necessarily proof that he was not at the scene of the crime.    But the question involved in extradition proceedings is not whether the defendant was at the scene of the crime at the time of its commission, but whether he was anywhere within the demanding state when the crime was committed.    This latter question had nothing to do with guilt or innocence, but it has all to do with the question whether the prisoner had fled from the demanding state, and is, therefore, a fugitive from justice.

"In the *Matter of Clark,* [9 Wend. (N. Y.) 212], the presence of the prisoner in the demanding state when the crime was committed was not disputed, and hence the question of *alibi* was not involved.    Before a warrant of extradition can be sustained, it must appear as a jurisdictional fact that the prisoner is a fugitive from justice; that is, it must be shown that he was actually present in the demanding state when the crime was committed.    Mere constructive presence is not enough."

The proposition as thus stated is clearly expounded and approved by all the cases.    Indeed, if the proposition were not sound the question whether a person is in fact a fugitive from justice, within the contemplation of the constitution and laws of the United States authorizing interstate extradition, could never be inquired into by the courts.    But, as is well suggested by counsel for the petitioner, to sustain the point as urged by the attorney-general would necessitate the declaration and the conclusion that the many cases heretofore passing upon the question were erroneous in their reasoning and conclusion.

Thus we have stated some of the principles governing the exercise of the power of interstate extradition and by the light of which the facts must and will be considered.

The indictment, a copy of which is annexed to the petition for this writ, alleges that the petitioner committed the crimes therein charged against him on the eighth day of June, 1912, in the county of Cook, in the state of Illinois.    In other words, that accusatory pleading, without qualification and unequivocally, fixes the eighth day of June, 1912, as the date of the commission of the crimes of which the petitioner is thus accused, and by neither specific nor general language pretends to fix or allege any other date.    It follows that it must clearly appear by competent proof, either direct or circumstantial, the latter, equally with the former, sufficient in evidentiary force to produce conviction of the fact, that the petitioner was in the state of Illinois on the eighth day of June, 1912.   If it be not thus satisfactorily shown that he was in said state on said day, then, obviously, one of the two essential prerequisites upon which alone the executive is empowered to issue his warrant of extradition and so authorize the removal of the petitioner to the state of Illinois is wanting or not shown to exist, and the prisoner would, therefore, be entitled to be released from a restraint which, if not intercepted, would ultimately lead to the unlawful removal of his person to another state.

First, it is to be remarked that, manifestly the indictment itself or the fact that thus the petitioner is charged with having committed certain crimes in the demanding state constitutes, if any at all, very remote evidence of flight or of the fact that the accused is a fugitive from justice.   A person may be a principal in the commission of a crime and not be present at the scene thereof at the time of its commission.   As a concrete example, one might plan the crime of murder in California, to be committed in the state of New York by his confederates, he remaining and being in the former state at the time of its commission.   While he would be a principal in the commission of said crime and could be indicted in New York for it and the courts of that state have the power or legal right to try and punish him therefor, if ever he came within their jurisdiction, still he would not be a fugitive from justice under the federal constitutional provision and laws establishing the authority for interstate extradition.

Now, as to the proofs in this case: In support of the application for the warrant of extradition, the respondent presented to the executive a number of affidavits which declare that at some other time than the eighth day of June, 1912, the peti-

tioner was in the state of Illinois.  The first of these affidavits was made by the state's attorney of Cook County, Illinois, and all that he therein declares is that the petitioner fled from said state on or about the twenty-eighth day of August, 1912. Another is by one Konekamp, who declares that the petitioner, with certain other persons, conspired with others to steal certain property from affiant, which said property was stolen, in pursuance of said conspiracy, "on or about" the eighth day of June, 1912.  One Roderick deposes that he is personally well acquainted with the petitioner and that "he knows of his own personal knowledge that the said Rean M. Shoemaker was personally present in the city of Chicago, County of Cook, state of Illinois, in the months of May and June, 1912.''  The dates in those months when he declares he saw Shoemaker were the twenty-first day of May—18 days prior to the alleged date of the larceny—and the twenty-eighth day of June, 1912— twenty days after said date.

The affidavits thus referred to constituted all the evidence presented by the respondent to sustain his application for the warrant of extradition.

It will be noted that no pretense is made that any person saw the petitioner or had personal knowledge of his presence in the state of Illinois on the eighth day of June, 1912.  So far as is concerned the showing made by the demanding state, the whereabouts of Shoemaker on the said eighth day of June were unknown.

It must be admitted that the presence of the petitioner in the state of Illinois eighteen days prior and his presence therein approximately three weeks subsequent to the day on which the larceny with which he is charged was committed, even assuming it to be true that he was there on those dates, constituted exceedingly slight and at best unsatisfactory circumstances by which the conclusion may be supported that he was in Illinois on the eighth day of June.  Those circumstances cannot be said to go any further than to tend to show that he *might* have been in Illinois on the eighth day of June. But while this is true, they are at the same time perfectly consistent with the hypothesis that he was not present in said state on said day or the few days immediately preceding and succeeding that date.

Thus it must be seen that the probative facts upon which the extradition of the petitioner is requested fall very far short

of satisfactorily establishing the all-important ultimate fact that he is a fugitive from the justice of the state of Illinois.

But, while it may, for the sake of the argument, be conceded that the testimony thus presented, considered in connection with the conclusion stated in the affidavit of the state's attorney that the petitioner "is a fugitive from the justice" of the state of Illinois, is sufficient to make out a *prima facie* case on that score, it is quite obvious that but a slight adversary showing by the petitioner would suffice utterly to destroy whatever probative value it might possess, standing alone or unchallenged.

But the petitioner has made more than a slight showing in rebuttal. The testimony presented by him is direct and positive.

The affidavit of the petitioner's wife, Alice L. Shoemaker, declares that she and her husband resided in California from the month of September, 1902, to December 8, 1911, on which latter date they removed temporarily to the city of New York, where they resided until the twenty-second day of August, 1912. "On the latter date, in company with my husband and family, we left New York for San Francisco, where we arrived on the 28th day of August, 1912, and have been residing in California since the latter date. My husband, the said R. M. Shoemaker, was at home in New York on the 8th day of June, 1912, and was not in the state of Illinois between the 15th day of May, 1912, and the 23rd day of August of said year; that on the said 23rd day of August we passed through Chicago on the journey from New York to California, and transferred from the Pennsylvania Railway cars to the Chicago, Burlington and Quincy Railroad at the Union Station, in Chicago."

Fred O. Dille deposes that, from about the first day of April to the thirtieth day of June of the year 1912, he resided with his family in the city of Buffalo, state of New York, and was then in the employ of the Western Union Telegraph Company; that he was in Buffalo on the eighth day of June, 1912; that as such employee he was under the supervision of the petitioner, whose office was then in the city of New York. "I recall distinctly and so aver," continues Dille's affidavit, "that on the 8th day of June, 1912, about the hour of 11 o'clock A. M., while in the city of Buffalo, state of New York, I called by long distance telephone at Statler Hotel said R. M. Shoemaker at his office in the city of New York, state of New

York, in the usual way, by informing the long distance operator of the telephone line, then operating between said cities, that I desired to speak to said R. M. Shoemaker at his office, at No. 9 John Street, city of New York, giving the number of his telephone, and at the said time said R. M. Shoemaker answered said telephone from the said city of New York, and I conversed with him over the telephone at that time and on that date and hour. I am familiar with his voice, and for that reason and from the subject matter of the conversation I know that it was said Shoemaker who answered the 'phone and was talking to me on said occasion.''

The petitioner, in his affidavit, after denying any complicity in or connection with or knowledge of the commission of the crimes charged against him in the indictment, states that he continuously resided in the state of California from the month of September, 1902, to the eighth day of December, 1911, when, with his family, he removed to the city of New York, to remain in said city temporarily; that he was in the city of Chicago, county of Cook, state of Illinois, about the middle of the month of May, 1912, remaining there for a period of two or three days, during which time he lived at the Great Northern Hotel, in said city; that he left Chicago not later than the twenty-first day of May, 1912, and returned to the city of New York, where he remained until the twenty-second day of August, 1912, on which day he left New York City with his family and returned by continuous trip to the state of California, where he arrived on the twenty-eighth day of August, 1912, and where he has ever since resided; that, on said journey from New York to San Francisco he passed through the city of Chicago on the twenty-third day of August, 1912, and left that city on the same day for Portland, Oregon, thence immediately to the city of San Francisco; that he was not in the state of Illinois on the eighth day of June, 1912, or at any time in the months of June or July of said year, or at any other time or times during said year, except in the months of May and August, as above stated.

From the foregoing, which constitutes a statement in substance of the proofs submitted by the petitioner, the conclusion is inevitable that the petitioner was not in the state of Illinois on the eighth day of June, 1912, or at any time within two weeks of that date. In this declaration we assume that the testimony presented by the petitioner is to be given full

credence, and why not, under the circumstances? As shown, the respondent nowhere declares or pretends to say that the petitioner was in said state on the day when the crimes are alleged to have been committed, and it follows, therefore, that there is no direct proof upon that question save that which comes from the petitioner. If the state had produced affidavits declaring in positive and unequivocal language that the petitioner was in Illinois on the said eighth day of June, a situation precluding a judicial review of the decision of the executive might then be presented, notwithstanding that the proofs presented before the governor were, as is true here, by affidavits. But the situation confronting us is such that either we must give full weight to the proofs adduced by the petitioner or hold that from such proofs, there being, practically, no showing by the respondent justifying a contrary view, there at least arises so grave a doubt of the presence of the petitioner within the boundaries of the state of Illinois on the date of the alleged commission of the crimes charged in the indictment as to generate and support the conviction that, to lend judicial sanction to his removal under such circumstances, would involve an unlawful and wrongful menace to and invasion of his inalienable constitutional rights.

It is true, as a general proposition, that upon the trial of one charged with crime it is not required that the people shall prove, in order to sustain a conviction, that such crime was committed at the precise date specified in the indictment. The general rule at the trial is that, although the crime may be alleged to have been committed on a specific date, proof that the crime was committed on some date within the period beyond which the prosecution of one charged with the crime would be barred by the statute of limitations, would be sufficient and a conviction upon such proof, so far as that fact was concerned, properly upheld. But there is no analogy between that proposition and the one here, where, to constitute him a fugitive from justice, it is indispensably necessary to show that the person whose extradition is sought was in the demanding state at the exact time of the commission of the offense with which he is here charged. As is said in the case of *Hyatt* v. *New York ex rel. Corkran,* 188 U. S. 691, [47 L. Ed. 657, 23 Sup. Ct. Rep. 456], "That the prosecution on the trial of such an indictment need not prove with exactness the commission of the crime at the very time alleged in

the indictment is immaterial. The indictments in this case named certain dates as the times when the crimes were committed, and where in a proceeding like this there is no proof, or offer of proof, to show that the crimes were in truth committed on some other day than those named in the indictments, and that the dates therein named were erroneously stated, it is sufficient for the party charged to show that he was not in the state at the times named in the indictments; and when those facts are proved so that there is no dispute in regard to them, and there is no claim of any error in the dates named in the indictments, the facts so proved are sufficient to show that the person was not in the state when the crimes were, if ever, committed. . . . It is difficult to see how a person can be said to have fled from the state in which he is charged to have committed some act amounting to a crime against that state, when in fact he was not within the state at the time the act is said to have been committed. How can a person flee from a place that he was not in? He could avoid a place that he had not been in; he could omit to go to it; but how can it be said with accuracy that he has fled from a place in which he had not been present? This is neither a narrow, nor, as we think, an incorrect, interpretation of the statute. It has been in existence since 1793, and we have found no case decided by this court wherein it has been held that the statute covered a case where the party was not in the state at the time when the act is alleged to have been committed. We think the plain meaning of the act requires such presence, and that it was not intended to include, as a fugitive from the justice of the state, one who had not been in the state at the time when, if ever, the offense was committed, and who had not, therefore, in fact, fled therefrom."

From the foregoing considerations, we are persuaded that it is our duty to discharge the prisoner from the custody of the agent of the state of Illinois and from the consequent restraint of his person, and it is so ordered.

Chipman, P. J., and Burnett, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on October 22, 1914, and the following opinion then rendered thereon:

CHIPMAN, P. J.—In an opinion filed September 30, 1914, in the above-entitled cause, by Mr. Justice Hart, speaking for the court, the facts and the law were very fully gone into and the conclusion reached was that the prisoner should be discharged and it was so ordered. We are now asked to grant a rehearing upon the ground that "this case if permitted to stand under the present decision will be of far-reaching importance as a precedent throughout the states of the Union, and it is highly important that the greatest measure of opportunity of full discussion of every possible feature of the law should be granted." Some authorities not called to our attention at the argument of the case are cited in the petition, but we cannot see that they cast additional light upon the questions involved. However this may be, we should feel inclined, out of abundant caution, to grant the petition were there not an insuperable objection in view of the nature of the case and the decisions of the supreme court upon the question of a right to a rehearing.

In *Ex parte Robinson,* 71 Cal. 611, [12 Pac. 794], Robinson petitioned the supreme court for a writ of *habeas corpus* and, after due hearing, he was remanded by order of the court. He filed a petition for rehearing and, in refusing to consider his petition, the court made the following order: "The Court: Petition for rehearing denied. There is no practice here allowing petition for rehearing in cases of *habeas corpus.*"

*Ex parte Williams* was a *habeas corpus* case decided by this court in July, 1906, and the petitioner was discharged. (7 Cal. Unrep. 301, [87 Pac. 565].) He applied to the supreme court for a hearing in that court, under the provisions of article VI, section 4 of the constitution. The petition was denied. "Per Curiam. The application for an order transferring the above-entitled cause from the district court of appeal to the supreme court for hearing and determination after judgment in said district court of appeal is denied; a majority of the justices of this court being of the opinion that the constitutional provision with reference to the transfer of cases from the district court of appeal to the supreme court has no application in matters of *habeas corpus.*"

In *Ex parte Zany,* 164 Cal. 724, [130 Pac. 710], a petition was filed in this court for a writ of *habeas corpus* and denied. (20 Cal. App. 360, [129 Pac. 295].) Zany petitioned the supreme court to have the cause there heard as was done in

the Williams case. The court, speaking through Mr. Justice Angellotti, Justice Shaw alone dissenting, again held that "it had no power to transfer in *habeas corpus* proceedings." The question was fully examined, the provision of the constitution carefully analyzed and the reasons very clearly given for denying the right. It seems to us that the full force of the reasoning is equally applicable where a rehearing is sought in this court, after it has either remanded or discharged the petitioner.

The contention of the attorney-general is that since the decision of the supreme court in the Robinson case, the law has been changed so that the petitioner may be admitted to bail pending the hearing and hence, the question of his present liberty being no longer involved, he is deprived of no right if after the order of his discharge the court should retain the power and exercise it to the extent of ordering a rehearing on the application of the people.

Both the Williams case and the Zany case were decided since the law was so changed as to allow a petitioner to give bail for his appearance pending the hearing on his petition for the writ. The question is whether, under the provisions of the constitution creating the district court of appeal, its judgment in *habeas corpus* cases is to be regarded the same as its judgments in *mandamus, certiorari,* and prohibition, which latter, as has been held, do not become final until "the expiration of thirty days after the same shall have been pronounced." (*Noel* v. *Smith,* 2 Cal. App. 158, [83 Pac. 167].)

In *Dawson* v. *Superior Court,* 158 Cal. 73, [110 Pac. 479], it was held that in prohibition cases the judgment of a district court of appeal may be transferred to the supreme court for reconsideration and decision.

The constitution provides as follows: "The said courts (district courts of appeal) shall also have power to issue writs of *mandamus, certiorari,* prohibition, and *habeas corpus,* . . . The supreme court shall have power to order any cause pending . . . before a district court of appeal to be heard and determined by the supreme court. The order last mentioned may be made before judgment has been pronounced by a district court of appeal, or within thirty days after such judgment shall have become final therein. The judgments of the district courts of appeal shall become final therein upon the

expiration of thirty days after the same shall have been pronounced.'' (Const., art. VI, sec. 4.)

The attorney-general contends that a judgment of the district court of appeal in a *habeas corpus* case, so far as concerns its finality, does not differ from a judgment in *mandamus* or prohibition. If it is final in the sense that judgments in prohibition and *mandamus* cases are final, it must follow that, as in these latter cases it may be reconsidered in this court before the expiration of thirty days from its rendition and by the supreme court before the expiration of sixty days, as are the other cases mentioned. But the supreme court, in the Zany case, distinctly held that the provision of the constitution declaring that ''the judgments of the district courts of appeal shall become final therein upon the expiration of thirty days after the same shall have been pronounced,'' is not applicable to *habeas corpus* proceedings. Attention is invited to the full discussion of the question and the reasons given for its decision by the supreme court, which we do not deem it necessary to here repeat.

It will be observed that the supreme court says that ''a *habeas corpus* proceeding cannot fairly be said to be so 'pending' at any time after judgment by such court. Such a proceeding is finally and definitely ended by the judgment, and if the petitioner be ordered discharged thereby, he is at once restored to liberty.'' If, then, our judgment, in this class of cases, remanding the petitioner is of such nature that he may at once have relief by an original petition to the supreme court for a writ without waiting the expiration of sixty days, we can see no reason why our judgment discharging the petitioner should in effect be suspended for thirty days with the right on the part of the respondent during that period to demand a rehearing in this court. The provision of the constitution under which this right is now claimed must be held to apply equally to a judgment of discharge as well as to a judgment remanding the petitioner. The very object of the constitution was to give opportunity to have the judgments of the district courts of appeal reconsidered by the supreme court. But as *habeas corpus* cases, as has been decided by the supreme court, are not of the class which may be thus reconsidered, it would seem to follow that a proceeding of this nature, as the supreme court has also decided, ''is finally and

definitely ended by the judgment,'' whether it be a judgment denying or granting the writ.

We attach no special significance to the fact that the petitioner may now be allowed to give bail for his appearance pending the hearing of his application. The object of the writ is to test the legality of his restraint and until he is discharged he cannot be said to be at liberty, and when discharged we do not think there is any provision of law, and certainly no rule of practice whereby he may again be brought before the court and compelled to show cause why the order discharging him should not be vacated and his petition reheard. The object of the writ is not merely to relieve the petitioner from present physical restraint but from all restraint which is being imposed upon him by his illegal detention. (Church on *Habeas Corpus,* sec. 87.)

We have exercised the power to grant rehearings, in ordinary cases, upon petition filed within the thirty days mentioned in the constitution and would probably vacate a judgment upon our own motion within that time if we thought an error had been committed. But we have no such power under the constitution after our judgments have become final; the only source of relief then open to a party is by petition to the supreme court under the rules of that court. (Par. 3, rule xxx, [160 Cal. lvi, 119 Pac. xiv].) As we have seen, neither the provisions of the constitution nor the rules of the supreme court apply to *habeas corpus* cases. It hence follows that we cannot grant a rehearing in such cases.

The petition is denied.

Hart, J., and Burnett, J., concurred.