[Crim. No. 916. First Appellate District, Division Two.—July 29, 1920.]

In the Matter of the Application of EVELYN TRAVERS for a Writ of Habeas Corpus.

[1] HABEAS CORPUS—INFECTION WITH COMMUNICABLE DISEASE—EVIDENCE—FINDING.—On this application for a writ of *habeas corpus* to secure the release of a woman imprisoned by a city health officer on the ground that she was infected with a certain communicable disease, the finding of the commissioner appointed by the court to take the evidence that two distinct, infectious, and communicable diseases were present at the time of the issuance of the writ was supported by the evidence presented, and was conclusive; and there was no evidence that either of those diseases had been eradicated since that time.

[2] ID.—SUBMISSION TO EXAMINATION — DURESS — EFFECT OF POLICE COURT METHODS.—The fact that on the hearing of the charge of vagrancy on which the petitioner was arrested the police judge stated that in every such case the woman is sent to be examined by the clinical officer, and if she passes, the case is dismissed, did not render such method of releasing persons thus charged, as a matter of leniency, the basis of a charge of duress, the peti-

Right of one detained pursuant to quarantine to *habeas corpus*, note, 2 A. L. R. 1542

tioner having, after such hearing, voluntarily submitted to the examination.

[3] ID.—DISCHARGE OF WRIT — JURISDICTION TO GRANT REHEARING.— After the alternative writ of *habeas corpus* is discharged and the petitioner is remanded to custody, the court has no jurisdiction to grant a rehearing. (On denial of rehearing.)

PROCEEDING on Habeas Corpus to secure the release of a person imprisoned on the ground that she is infected with a communicable infectious disease. Writ discharged and petitioner remanded.

The facts are stated in the opinion of the court.

Raine Ewell for Petitioner.

Matthew Brady, District Attorney, and Leo R. Friedman, Assistant District Attorney, for Respondent.

BRITTAIN, J.—On the petition of her attorney, a writ of *habeas corpus* in this matter was made returnable to this court. The petition, which was lengthy, and need not be set forth, was based upon the alleged facts that Evelyn Travers was imprisoned by the health officer of the city and county of San Francisco, in a certain ward of the city and county hospital, on the pretense that she was infected with a certain specific disease, that she was not examined by a licensed physician, and that she was examined against her consent. It was further alleged that she was arrested while on her way to her home, without warrant or cause, by a peace officer, that she was discharged by the police court on the following morning, and that she was examined by a doctor while she was under duress produced by threats that she would be convicted of vagrancy and sentenced to the county jail unless she consented to the examination. It was alleged also that she was not suffering from the particular disease mentioned in the petition nor from any other contagious or infectious disease, that the state board of health nor its secretary had not taken control of the case, nor caused her restraint in the hospital to prevent the spread of such disease, that she had been deprived of nourishing food, access to the sunshine, and of the visits of her friends and attorney.

[1] On the return of the writ by the health officer of the municipality, who is also an inspector of the state board of health, most of the allegations of fact were traversed, and other facts set forth as a justification for the detention. Because of the wide divergence of the two statements of fact it became necessary for evidence to be taken. The matter was referred to Thos. F. Prendergast, a commissioner appointed by the court. The proceedings before the commissioner were reported by the official reporter of the court. No good result would follow from even summarizing either the evidence or the report of the commissioner. Suffice it to say that the examination was continued at great length. A large number of witnesses testified and documentary evidence was introduced. The testimony of medical experts on the part of the respondent was direct and positive concerning the infection of the woman by two distinct, infectious and communicable diseases most frequently transmitted through participation in social vice. The evidence of medical witnesses called on behalf of the petitioner was to the effect that when they made examinations the recognized tests failed to show the presence of the specific diseases in question. There was unquestionable evidence that by certain preliminary treatments the tests in cases of admitted infection might be rendered negative of proof for a short period during which an examination might have been made. The court is of the opinion that the finding of the commissioner that the two forms of disease in question were present at the time of the issuance of the writ is sustained by the evidence and is conclusive; and there is no evidence that either has been eradicated since that time.

It is a matter of common knowledge that the federal government, the state government, and the municipal government are engaged in an effort to prevent the spread of the two diseases in question. By section 2979 of the Political Code the state board of health is vested with general power of inspection, examination, quarantine, and disinfection of persons within the state, and with power to appoint inspectors who, under the direction of the board, shall be vested with like powers. The state board of health appointed the health officer of the municipality such an inspector, and directed him, as one of its such inspectors, "to

use every available means to ascertain the existence of, and immediately to investigate, all reported or suspected cases of syphilis in the infectious stages, of gonococcus infection.'' Inspectors were further required to make examinations of all persons reasonably suspected of having either of the specified diseases, and ''owing to the prevalence of such diseases among prostitutes, all such persons may be considered within the above class.'' The law provides for the isolation of persons suffering from infectious and contagious diseases. Such laws have been upheld in a multitude of cases, and the safety of the community depends upon the proper enforcement of health and quarantine regulations. On *habeas corpus* proceedings the first question and usually the only one presented is as to the existence of the power of restraint. In this case the power to isolate persons suffering from the particular diseases, or either of them, cannot be seriously questioned.

The commissioner finds that the arrest was made, not as stated in the petition, but in a lodging-house, which the woman was visiting for purposes of prostitution, that the records of the police court show that she was charged with vagrancy, that she appeared and pleaded not guilty, waiving a jury, that she was then given a hearing, and the case was continued to a later date. It is further found that after the hearing she voluntarily submitted to a physical examination by the doctor then in charge of the diagnostic clinic of the department of public health of the city, who was assisted by a graduate nurse, and that the specimens then obtained were sealed and submitted to another doctor who was the chief bacteriologist of the department, upon whose report the health officer made the order of detention in the San Francisco hospital, and of quarantine. It is further found that other allegations in the petition are untrue, particularly in regard to the food and treatment of the patient at the hospital.

Some contention was based on the ground that the examining doctor at the time was not a licensed physician. There was no suggestion that he was not a capable and learned physician, who was in charge of the clinic by the order of the health officer. He did not make the order of detention and the examination was made by consent. [2] In regard to the charges of duress on behalf of the peti-

tioner, it was sought to be shown that the police judge had stated that in every such case the woman is sent to be examined by the clinical officer, and if she passes, the case is dismissed. Thereupon it was stipulated by the district attorney that such is the invariable practice, not, however, for the purpose of forcing the women so charged to submit to examinations, but to enable the police judge to show leniency to them. Whatever might be said concerning this method of releasing persons charged with vagrancy merely as a matter of leniency, in the particular case it cannot be made the basis of a charge of duress. The woman, if satisfied of her innocence, might have submitted to trial and judgment. If she was guilty and had been sentenced, she might have been examined even against her will. She chose the easier of the two courses open to her.

Upon the allegations in the petition the writ was ordered issued, but in view of the record the petition was without · foundation. It is considered proper in this connection to add that if a person arrested on the charge of vagrancy should appear to be suffering with another disease, small- · pox, for instance, and the proceedings followed which took place in this case, the evil consequences to the community might have been frightful to contemplate. Persons petitioning for *habeas corpus,* particularly when such petitions are made on behalf of another, should be well assured of the facts represented to the court as true. In the present instance the petitioner no doubt erred or was misinformed, but such errors fraught with danger to the community should not be made. This statement is considered necessary to prevent anything in this opinion being considered as authority for unwarranted applications for the release of persons properly quarantined under lawful regulations of the public health department.

The writ is discharged and Evelyn Travers is ordered returned to the care of the respondent health officer.

Langdon, P. J., concurred.

NOURSE, J., Dissenting.—I dissent. The undisputed facts are that petitioner was arrested on a charge of vagrancy, was taken from her place of abode to the police court where she pleaded not guilty, and, without trial or

judgment, was ordered into the custody of the health officer. She was then taken to the city and county hospital where, in direct defiance of a penal statute, she was subjected to a medical examination by an unlicensed employee illegally styling himself a doctor. As a result of such examination she was ordered confined in the city and county hospital for an indefinite period and was so detained without warrant or judicial commitment when released on bail by order of this court.

The power to quarantine diseased persons for the purpost of preventing the spread of communicable diseases need not be questioned. The power to imprison a citizen in a public hospital without trial or commitment is obnoxious to every American principle of right and justice. It is one of the fundamental principles of both our federal and state constitutions that no person shall be ''deprived of life, liberty or property without due process of law.'' ''It is a rule as old as the law, and never more to be respected than now, that no one shall be personally bound until he has had his day in court, by which is meant, until he has been duly cited to appear, and has been afforded an opportunity to be heard.'' (*Galpin* v. *Page*, 85 U. S. (18 Wall.) 350, 368, [21 L. Ed. 959, see, also, Rose's U. S. Notes].)

In the present case the petitioner, having been charged with the crime of vagrancy, was entitled to a trial and judgment upon that charge. It matters not that she consented to go to the city and county hospital for medical examination on the promise of the judge of the police court that he would dismiss her case if found free from disease— and the implied threat that if she did not consent she would be convicted and sentenced. The magistrate was without power to make any such promises. It was his duty to try her for the offense of which she was charged and find her either guilty or not guilty of that offense. The presence of disease is no element of the crime of vagrancy, except in certain instances defined in section 647 of the Penal Code, which are not material to this case. If, as claimed in argument, the petitioner was a prostitute, then, under section 647, she was a vagrant. That was the issue which was presented to the magistrate and upon that issue she

48 Cal. App.—49

was entitled to a trial. She did not have a trial upon that or any other issue.

The broad scope of the main opinion is atrocious in its consequences. Having approved the farcical and unjudicial pretense of a trial in the police court, the effect of the opinion is that any citizen may be taken from his home, and, without trial or judgment, confined in a public hospital during the will and pleasure of the health officer if some unlicensed employee of the institution believes that he is afflicted with some contagious disease. During such confinement the victim may be denied the right to call in his own physician, but is forced to subject himself to such medical treatment as the employees of the hospital may choose to give him.

Section 2979a of the Political Code, the section under which the health officer is acting, authorizes him, when acting as an inspector under the state board of health, to "take possession or control of the body of any living person" upon being informed of any of the contagious or infectious diseases mentioned in the section. Among the diseases therein mentioned are tuberculosis, pneumonia, diphtheria, measles, chickenpox, whooping-cough, mumps, and "any other contagious or infectious disease." Thus a parent whose child is afflicted with any of the many contagious diseases prevalent among children may be denied the right of caring for his child in his own home and of calling a physician of his own choosing. All that is necessary, under the main opinion, is for the health officer to be informed that some contagious disease exists. Then he may take possession and control of the "body of any living person" (not necessarily one afflicted with the disease), remove him from his home and the care of his family, and confine him in the county hospital, without commitment, until such time as the employees of the hospital may determine that his illegal imprisonment might cease. If such be the law, one who is afflicted with tuberculosis may suffer a greater punishment for his offense than one who has committed a burglary.

The provisions of section 2979a, in so far as they attempt to authorize the imprisonment of the individual for an indefinite term without trial and without commitment, are unconstitutional and void. The petitioner is detained by the

health officer solely under the authority of that section. Her imprisonment in the city and county hospital is without the semblance of a legal confinement and she should be discharged.

A petition for a rehearing of this cause was denied by the district court of appeal on August 24, 1920, and the following opinion then rendered thereon:

THE COURT.—[3] The petition for a rehearing is denied on the ground that this court has no further jurisdiction. (*Matter of Application of Shoemaker,* 25 Cal. App. 568, [144 Pac. 985]; *Ex parte Robinson,* 71 Cal. 611, [12 Pac. 794].)